Johh P. O ’Mara, J.
The defendant was convicted after a jury trial of criminal .sale of a controlled substance in the first degree based on a $5,000 sale of cocaine, criminal possession of a controlled 'substance in the fifth degree, and criminally .using drug paraphernalia in the second degree. The defendant has moved ■to set aside his sale conviction (CPL 330.30, subd. 1) on the ground that the offense and its related sentencing provisions violate the United States Constitution.
The crime of criminal sale of a controlled substance in the first degree is ¡a class A-I felony which requires upon conviction a mandatory indeterminate sentence (Penal Law, § 60.05, subd. 1) with .a maximum of life (Penal Law, '§ 70.00, subd. 2, par. [a]) and a minimum between 15 and 25 years (Penal Law, § 70.00, -subd. 3, par. >[a], el. [i]). A defendant indicted for a class A drug f elony is prohibited from reducing the charge below *74 a class A-III felony by plea bargaining (iCPL 220.10, subd. 6, par. [a]), and may not have his class A drug felony charge ¡satisfied by his plea to a nonclass A charge in ¡a separate indictment (CPL 220.30, subd. 3, par. [b], cl. [i]). A defendant sentenced as a class A drug’ felon will face lifetime parole when released (Penal Law, § 70.40, .subd' 1; Correction Law, § '212, .subd. 8; see Rosenblatt, New 'York’s New Drug Laws and Sentencing Statutes, Law Journal Press [1973]).
Defendant’s first claim is that the punishment 'imposed on class A drug* felons is cruel and unusual in violation of the Eighth and Fourteenth Amendments. Defendant first argues that the seriousness of the crime measured by its danger to the individual and to ¡society is wholly disproportionate to the mandated punishment. .Secondly, he states that a disproportionality exists between the punishment for class A drug crimes and that for more serious crimes within New York. Thirdly, the defendant cites the punishment imposed for similar crimes in other jurisdictions as indicative of the cruel and unusual nature of New York’s laws. Lastly, defendant relies upon the expressions found in various studies and in model legislation.
Defendant’s second claim is that the legislation is an .arbitrary classification which constitutes a denial of equal protection of the laws because class A drug offenses are punished more severely in New York than crimes of a similar or more serious nature.
In determining the constitutionality of a statute this court is confronted with a strong presumption of constitutionality together with a presumption that the Legislature has investigated the need for the legislation and found the facts' necessary to support it. (Matter of Taylor v. Sise, 33 N Y 2d 357, 364; and I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263, 269.) It is a matter of .record that the Legislature had the benefit of many detailed and exhaustive reports on -the problem ¡of illicit drug traffic including those of the Temporary State ¡Commission to Evaluate the Drug Laws and that it further held extensive hearings at which voluminous evidence was received. The court is personally familial- with those hearings, having testified before the Joint Codes ¡Committees of the ¡Senate and Assembly which considered at length the legislation in question. It is significant to note that the ¡original bill ¡submitted to the Legislature called for a life sentence without parole for the sale of any amount of narcotics, hallucinogens o,r amphetamines (see N. Y. L. J., Jan. 15, 1973, p. 1, col. 4) and that there was substantial ¡support before the Legislature, this court not *75 included, for that proposal. (Testimony before Joint Codes Committees, Feb., 1973.)
Despite the aforesaid presumption and the legislative investigation 'this ¡court must ¡still determine whether the resulting statute passes constitutional muster. This court, even if it felt that perhaps a different statute were preferable, cannot substitute its judgment for that of the Legislature if the statute enacted by the Legislature does not violate the Constitution (People v. Griswold, 213 N. Y. 92, 97; Matter of Taylor v. Sise, supra, p. 365; Marshall v. United States, 414 U. S. 417).
The Supreme Court, in declaring certain statutes calling for the death penalty unconstitutional, discussed the question of cruel and unusual punishment in great detail (Furman v. Georgia, 408 U. S. 238). While there was no majority opinion in that case, the following excerpt from Justice Brennan’s opinion appears to best .summarize the factors discussed by the various Justices (p. 282): “The test, then, will ordinarily be a cumulative one: If a punishment is unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason Ito .believe that it serves any penal purpose more effectively than some less severe punishment, then the continued infliction of that punishment violates the command of the Clause that the State may not inflict inhuman and uncivilized punishments upon those .convicted of crimes.”
In Furman, the factor which appeared to carry the greatest weight in the finding of unconstitutionality was the arbitrary, capricious and discriminatory fashion in which the penalty was imposed. The statutes there were completely discretionary with regard to the imposition of the maximum sentence, that is death, and it was rarely imposed. Under the present ¡statute, with one exception (Penal Law, § 65.00, subd. 1, par. [b]), the imposition of the maximum sentence, an indeterminate sentence .of life imprisonment, is mandatory and thus there can be no claim that the statute here can be arbitrarily applied as to any person charged with an A-I, II or III drug felony.
A second .principle considered by the Supreme .Court in Fur-man, is that the punishment may not be “ unusually severe ”. Justice Brennan summarized it as follows: “ a punishment must, not be so severe as to be degrading to the dignity of human beings ” (408 U. S. 238, 271, supra). The defendant does not argue, nor could he, that an indeterminate sentence ¡of life imprisonment per se is in all cases so severe as to be cruel and unusual punishment. In fact, the Supreme ¡Court in Furman, left open *76 the question of whether the death penalty is always unconstitutional.
In class A drug felony cases the .severity of the life maximum is offset by the defendant’s eligibility for parole following .service of the minimum sentence imposed by the court. ¡Such an indeterminate sentence permits the board of parole to release the defendant from prison when it is of the opinion “ there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society ” (Correction Law, § 213). A defendant must be considered for parole at least one month prior to the expiration of his minimum sentence and, if parole is denied, not later than every 24 months thereafter (Correction Law, § 212). Such a sentencing .structure and the criteria for parole selection considered by the board of parole (.see 7 NYCBB 1.10) permit release from incarceration at the most opportune time from the standpoint of both the individual and society. The fact that such parole would be for life is only indicative of the legislative judgment that class A drug felons require continuing supervision to insure that they do not return to their illicit drug activities. This court has noted that many defendants who come before it charged with drug offenses are in fact recidivists, and the testimony of former Commissioner of -Corrections Oswald indicated that felons convicted of narcotic crimes have a 60% higher recidivist rate than other felons (Testimony before Joint ¡Codes Committees, Feb., 1973).
It is further clear that the requirement of mandatory minimum sentences does not in and of itself constitute “unusually severe ” punishment (see United States v. Ross, 464 F. 2d 376; United States v. Lozaw, 427 F. 2d 911; and United States v. Fiore, 467 F. 2d 86). The ideal of “ individualized ” sentences (People v. Selikoff, 35 N Y 2d 227) is served by the fairly wide range of minimum sentences permitted as well as the individual consideration given each defendant for parole as noted above.
To contend that, when considering the constitutionality of the punishment that may be imposed, only the maximum sentence is relevant is to ignore the reality of the -situation. One who is faced with sentencing for a class A drug felony certainly appreciates the fact that there is a vast difference between a life sentence without parole and an indeterminate life sentence with eligibility for parole after serving a minimum .sentence.
It is this court’s opinion that the Legislature was justified in concluding that the crimes classified as class A drug felonies represent a most serious and constant threat to our society. Drug *77 trafficking .and its consequences are a problem foremost in the minds of ¡all citizens. The contention that the .statute here must-be -struck down because other so-called more serious and violent crimes are dealt with le-ss -severely cannot prevail. In fact, such an argument begs the question before the court. In the -words of Justice Joseph D. Quinn, Jr., who recently upheld the constitutionality of these same statutes: “We are not * * * dealing with 1 nonviolent ’ offenses here. Realistically, we deal with but •one phase of a large scale, well entrenched criminal activity that springs from human greed and preys on man’s weakness — one that turns buyers into sellers, makes addicts out of newborn infants and sets addicts to mugging, thievery, prostitution, robbery and murder to support an insatiable appetite.” (People v. Gardner, 78 Misc 2d 744, 750.)
The nature of drug traffic i.s -such that it does not stop with the transfer of the drugs but continues -and progresses as new persons are addicted, addicts are supplied and further crimes committed with ¡the number of victims continuing to multiply. Indeed, it can be -said that such activity constitutes a much greater threat to society than a -single, perhaps isolated, act of violence. It is this court’s opinion that the punishment imposed by the Legislature “ graduated and proportioned to offense ” (Weems v. United States, 217 U. S. 349, 367) is not unreasonable in relation to the nature of the crimes in question and, therefore, it is not “ so -severe as to be degrading to the dignity of human beings ” (Furman v. Georgia, 408 U. S. 238, 271, supra).
A further question to be decided by the court is whether the punishment is excessive and “ if there is a sufficiently less -severe punishment adequate to .achieve .the purposes for which the punishment is inflicted [citations omitted] the punishment inflicted is unnecessary and therefore excessive ” (Furman, supra, p. 279).
It is a matter of record in New York that the Penal Law enacted in 1965 (eff. Sept. 1, 1967) provided for substantially lessened penalties for drug law violations than were previously in effect (see former Penal Law, § 1751). It cannot be argued that these less -severe methods of1 'dealing with -drug trafficking provided -a sufficient deterrent as the problem in this State continued to increase. As former Governor Rockefeller pointed out in his annual message to the Legislature in 1973, educational and treatment pr ograms supported by large funding -also failed to ameliorate the problem (see Annual Message of the Governor, McKinney’s -Session Laws of 1973, pp. 2317-2322). In view of the failure of nonpenal measures and less -severe penalties, this court *78 cannot find that the punishment now provided is “ excessive ” or “ unnecessary ”.
Further, the fact that other States have laws which were previously harsher than the laws of New York and are now less severe does not make this State’s laws unconstitutional. Concededly, New York State is confronted with the worst drug problem in the- country and, in any event, the validity of these statutes should be determined by constitutional standards and not by comparative analysis.
The defendant further contends that, in the language of Fur-man (408 IT. S. 238, supra), the punishment called for here is substantially rejected by contemporary s'ociety. The Legislature is elected every two years by the voters of the State and as such is responsive to the feelings of our contemporary society. Our society today, as evidenced not only by the ¡actions of the legislative and executive branches of Government but by public opinion polls for the past several years, is gravely concerned with the threat of crime generally and specifically with the ever increasing drug problem. As noted above, there was substantial support before the Legislature for the proposal that any sale of narcotic, hallucogenics or amphetamines .receive a life sentence without parole. The present sentencing structure, rather than being rejected by contemporary .society, has been prompted by society’s demand that strong action be taken to attack the drug problem. The punishment in question, in addition to being accepted by contemporary society, does not shock the conscience of the court.
Defendant argues that he is denied equal protection of the laws in that, while other defendants charged with nondrug class A felonies can plea bargain, he cannot. Plea bargaining, when properly conducted, is a valuable tool to the criminal justice system and has been so recognized by the Court of Appeals and the Supreme Court (People v. Selikoff, 35 N Y 2d 327, supra; Santobello v. New York, 404 U. S. 257; and Brady v. United States, 397 U. S. 742). However, approval of the propriety of plea bargaining does not create a constitutional right for a defendant to be able to engage in such bargaining (Newman v. United States, 382 F. 2d 479). The Legislature, in setting the punishment for these crimes, has limited plea negotiations in keeping with its determination that one who commits a class A drug felony should be sentenced in accordance with the penalties provided for such crimes. This court, even though it might feel greater latitude desirable, cannot substitute its judgment for that of the Legisla *79 ture, nor does it find that such limitation deprives the defendant of equal protection of the laws.
In considering the .statute’s constitutionality, the court has measured' it against the various .standards .discussed above individually -as well as cumulatively and finds that it neither constitutes cruel and unusual punishment nor denies equal protection of the laws. The defendant’s motion is in all respects denied.