In the Matter of ARTHUR GREENE et al., Respondents, v. LEE GOODWIN, as Commissioner of Housing and Community Renewal of the State of New York, et al., Appellants.

Second Department, November 25, 1974.

*Louis J. Lefkowitz, Attorney-General (Jesse J. Fine* and *Samuel A. Hirshowitz* of counsel), for Lee Goodwin, appellant.

*Szold, Brandwen, Meyers & Altman (Milton Altman* and *Arthur Gussaroff* of counsel), for Rochdale Village, Inc., appellant.

*Barney Rosenstein* for respondents.

*Richard Rifkin* for Robert Abrams, President of the Borough of the Bronx, *amicus curiae.*

*Stephen B. Kaufman* for Co-op City Steering Committee No. 3, *amicus curiae.*

*Karen Burstein* for Edward Abramson and Archie Spigner, *amici curiae.*

*Per Curiam.* The judgment under review annulled an order of appellant Lee Goodwin, Commissioner of Housing and Community Renewal of the State of New York, dated June 11, 1974, authorizing the appellant Rochdale Village, Inc. to increase its maximum average monthly carrying charges payable by the tenant-co-operators residing in Rochdale Village. We are also reviewing an order of the same court, entered November 12, 1974, insofar as, upon reargument, it adhered to the above-mentioned determination.

Rochdale Village, Inc. is a co-operative housing company organized under article II of the Private Housing Finance Law, commonly known as the Mitchell-Lama Law. It is the corporate vehicle through which its tenant-co-operators own and operate the nearly 6,000-apartment community of Rochdale Village, located in Queens, New York. As is common to all co-operatives

the tenant-co-operators elect a board of directors whose job it is to guide the affairs of the project, including its finances. It is the obligation of the tenant-co-operators to pay carrying charges in an amount sufficient to meet the expenses of the project.

Rochdale's board of directors, faced with continuously escalating costs of operation, unanimously voted an increase in the carrying charges. (The last previous increase occurred in November, 1971.) The board determined that in order to meet expenses it would be necessary to increase the maximum average carrying charge per rental room per month from $31.46 to $36.49, retroactive to January 1, 1974 and to $40.14 effective January 1, 1975 (all including utilities). In February, 1974 it applied to the appellant commissioner, as required by the Mitchell-Lama Law, for approval of the increase. The application included financial data setting forth the actual expenses and income of the project for the fiscal year ending March 31, 1973 and projections of expenses and income for the fiscal years 1974 through 1978.

A copy of the application was mailed to each of the nearly 6,000 tenant-co-operators, together with a notice that a meeting would be held on April 9, 1974 in the auditorium of Rochdale Village at which time questions could be asked and objections raised with respect to the proposed increase. The co-operators were also notified that written objections to the proposed increase could be submitted to the commissioner. The meeting was held as scheduled, with some 2,000 co-operators attending. Everyone who asked to speak was permitted to do so. Additionally, about 1,350 written communications were sent to the commissioner.

A detailed examination of all the relevant data was undertaken by the commissioner's office, which resulted in a finding that the present maximum average carrying charge of $31.46, including utilities, per rental room per month, was insufficient to permit the applicant housing company to meet its expenses within reasonable limits. It was determined that a minimum increase of $10.02 in the maximum average monthly room carrying charge was necessary for this purpose. The commissioner, therefore, by the above-mentioned order dated June 11, 1974 directed Rochdale Village, Inc. to increase its maximum average carrying charges from $31.46 per rental room per month to $37.71 effective as of April 1, 1974 and to $41.48 effective as of January 1, 1975 (all utilities included). The commissioner indicated that she ordered a slightly higher increase than was requested by the board of directors in February, 1974 because of the continuing inflation during the four-month time interval.

In August, 1974 the petitioners, who are tenant-co-operators residing in Rochdale Village, brought this proceeding, pursuant to article 78 of the CPLR, to have the commissioner's order declared null and void. The Special Term found in favor of the petitioners, stating that the commissioner "has not given the court sufficient information upon which it can make any reasonable determination as to whether her action was arbitrary or not." It held that the commissioner was required to accord the tenant-co-operators a hearing before it could be determined whether her ruling was reasoned and not arbitrary.

We disagree with the result reached by the Special Term. Authority for the commissioner's order can be found in article II of the Private Housing Finance Law (Mitchell-Lama Law). Section 31 (subd. 1, par. [a]) thereof directs the commissioner, on her own motion or upon application of an article II housing company, to vary the carrying charge from time to time to secure sufficient income to the project to meet all its expenses within reasonable limits. All the parties agree that that statutory provision does not require that a hearing be held before the commissioner can approve an increase in carrying charges. Indeed, where the Legislature has intended to provide for a hearing, it has expressly done so (see Private Housing Finance Law, § 87; § 26, subd. 5, par. [a]; § 114, subd. 2; § 503, subd. 3; § 507; § 553).

However, it is the petitioners' contention, with which the Special Term apparently agreed, that they are entitled to an evidentiary hearing as a matter of due process. We find, under the facts of this case, that no due process question is involved. The tenant-co-operators are their own landlord. Therefore, we are actually dealing with an internal dispute. It was the petitioners' own elected board of directors which requested the increase in the carrying charges. The necessity for approval by the commissioner of an increase in the charges, recommended by a board of directors of an article II housing company not only protects the State's financial interest in the project but also, as a practical matter, the interests of the tenant-co-operators. Furthermore, any dispute between a board of directors and the tenant-co-operators can be resolved by other available remedies. Under these circumstances, due process did not require a hearing before the commissioner. We note, however, that a meeting was held, at which time the tenant-co-operators were given an opportunity to ask questions and raise objections. Moreover, they were also permitted to submit written objections to the commissioner and many of them did so.

We also cannot agree with the Special Term's finding that there was insufficient information to permit an intelligent review of the commissioner's determination. In opposition to the claims raised by the petitioners in this article 78 proceeding, the commissioner submitted to the Special Term the detailed study made by her office of the project's yearly income and operating costs since 1972. Also submitted were projections for future years, based on past experience and future expectations, with each category of income and expense being separately projected. The use of such projected estimates is an acceptable aid in determining proper carrying charges (*Hanks* v. *Urstadt*, 74 Misc 2d 536, affd. 37 A D 2d 1044). The Special Term also had before it up-to-date certified balance sheets and operating statements prepared by the accountants for Rochdale Village, Inc., as well as their projection for future years, all of which had been submitted to the commissioner. The commissioner's decision must be upheld if founded upon a rational basis (*Matter of Sullivan County Harness Racing Assn.* v. *Glasser*, 30 N Y 2d 269). We find that such a rational basis exists in the instant case.

For the reasons stated above, the judgment and the order must be reversed insofar as reviewed, on the law, without costs, the proceeding dismissed on the merits and the commissioner's determination confirmed.

GULOTTA, P. J., HOPKINS, MARTUSCELLO and CHRIST, JJ., concur; SHAPIRO, J., not voting.

Judgment of the Supreme Court, Queens County, entered November 4, 1974, and order of the same court entered November 12, 1974, reversed insofar as reviewed, on the law, without costs, proceeding dismissed on the merits and determination of the appellant commissioner confirmed.