Susan R. Shimer, J.
Defendant is charged with operating a motor vehicle, while having in excess of .10% by weight of alcohol in his blood, a violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law.[1] Defendant, with the consent of the People, seeks to enter a plea of guilty to subdivision 1 of section 1192 of the Vehicle and Traffic Law — to wit operating a motor vehicle while his ability to operate the vehicle is impaired by the consumption of alcohol — a lesser included offense.
According to the standard test, used to determine weight of alcohol in a person’s blood, which was administered within the time prescribed by statute, defendant had .17% of alcohol in his blood. The court determines that this result, which is not challenged at this stage, makes it inappropriate to accept the lesser plea and accordingly denies permission to enter such plea here.[2]
I
THE ARGUMENT FOR ACCEPTANCE OF THE PLEA HERE
The defendant and the People have not accepted the court’s offer to submit papers in support of their request that the court accept a plea of guilty to the lesser offense of driving while impaired. However, both the defendant and the People have outlined in open court their argument in support of such a plea. Defendant’s position is as follows: defendant is (a) a *212 veteran with an honorable discharge, (b) employed, (c) has a blemish-free driving record, (d) was not to blame for the accident which took place shortly before his arrest, and (e) no injury was caused by the accident. Defendant’s attorney has further advised the court that, although defendant is employed by a New York company, defendant is a Connecticut resident, that accordingly, he is not eligible for participation in the alcohol rehabilitation program set up for New York State drivers convicted of a violation of section 1192, that the attorney believes Connecticut will suspend defendant’s driver’s license if he is convicted- of a violation of subdivisions 2 or 3 of section 1192 of the New York Vehicle and Traffic Law, but will probably let him continue driving if he is guilty, after trial or by plea, of driving while impaired. Defendant’s attorney further argues that the policy of the law is to rehabilitate the defendant and that it would be served by the plea offered here.
The People consent to the plea offered on the following grounds: (a) defendant has no prior record; (b) the result of the breathalyzer test shows that defendant had .17% of alcohol in his blood; (c) defendant was not responsible for the accident which took place at the time of his arrest; and (d) the acceptance of the plea is within "the guidelines” of the District Attorney.
II
THE LEGISLATURE CLEARLY INTENDED THAT A PERSON WITH TEST RESULTS SUCH AS THAT HERE BE TRIED UNDER SUBDIVISION 2 OF SECTION 1192 AND ACCEPTANCE OF A LESSER PLEA WOULD PERVERT THAT INTENTION
A. THE RELEVANT STATUTE ON ITS FACE ESTABLISHES THAT A PLEA TO A LESSER OFFENSE IS IMPROPER HERE
Defendant has been charged with a violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law which provides in pertinent part: "No person shall operate a motor vehicle while he has .10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva”.
It is clear on the face of this statute that the Legislature has made the operation of a motor vehicle while a person has ".10 of one per centum or more by weight of alcohol in his blood” a per se violation of the Vehicle and Traffic Law. *213 Defendant is charged with having substantially more than .10% in his blood and the People do not acknowledge any substantial error in the measurement.
B. A RELATED STATUTORY PROVISION CONFIRMS THAT A LESSER CHARGE IS NOT APPROPRIATE HERE
Even if the language of subdivision 2 of section 1192 could be construed as ambiguous, a review of subdivision 2 of section 1195 of the Vehicle and Traffic Law should dispel all doubt. That section specifically provides for the evidentiary weight to be given to certain blood alcohol content in determining a violation of certain parts of section 1192. In all cases, however, it deals with blood alcohol content of only up to .10%.[3] Any measure in excess of that amount is thus a per se violation. Defendant here is charged with having a blood-alcohol content of substantially more than .10%.
C. THE PENALTIES FOR A VIOLATION OF SUBDIVISIONS 1 AND 2 OF SECTION 1192 ARE SUBSTANTIALLY DIFFERENT
Subdivision 5 of section 1192 provides that "A violation of subdivisions two * * * of this section shall be a misdemeanor and shall be punishable by imprisonment in a penitentiary or county jail for not more than one year, or by a fine of not more than five hundred dollars, or by both such fine and imprisonment.” A sentence of probation or conditional discharge may be imposed as an alternative sentence for violation of subdivision 2 of section 1192 since it is a misdemeanor. (See Penal Law, §§ 65.00, 65.05.) A conviction for violation of subdivision 2 of section 1192 also requires revocation of a person’s New York State driver’s license (Vehicle and Traffic Law, § 510, subd 2, par a, cl [iii]), and apparently suspends a Connecticut resident’s right to drive there.
A violation of subdivision 1 of section 1192, on the other hand, is only a traffic infraction punishable by a fine not to exceed $50 or imprisonment of 15 days or both (Vehicle and Traffic Law, § 1800, subd [b]). No sentence of probation may be imposed as an alternative punishment, although a conditional *214 discharge is possible. (See Penal Law, §§ 65.00, 65.05.) A defendant’s conviction under subdivision 1 of section 1192 results in suspension of his New York State driver’s license for only 60 days (§ 510, subd 2, par b, cl [i]), and may have no effect on his Connecticut driver’s license.[4]
D. SUBDIVISION 2 OF SECTION 1192 IS NOT A STATUTE OF ANCIENT VINTAGE WHICH MIGHT BE DEEMED OVERRULED BY COMMON PRACTICE
We are not dealing here with a statute enacted many years ago whose intent and indeed precise wording conceivably might be overridden by common practice. The statute as presently constituted providing that .10% is a per se violation was enacted in 1972 (L 1972, ch 450).
E. THE LEGISLATIVE HISTORY OF SUBDIVISION 2 OF SECTION 1192 FURTHER ESTABLISHES THAT THE LEGISLATURE CLEARLY INTENDED THAT DEFENDANTS BE TRIED UNDER THAT PROVISION
1. THE LEGISLATURE’S CONCERN THAT THE JUDGE HAVE BROAD DISCRETION TO IMPOSE PUNISHMENT THAT WILL DETER
The original section 1192 was enacted in 1959 (L 1959, ch 775). That law provided that blood-alcohol content in excess of .15% would be '’prima facie evidence that the defendant was in an intoxicated condition”, a misdemeanor. (Emphasis supplied.) Under that statute, the maximum punishment was imprisonment for not more than 30 days or by a fine of not more than $100, or by both (Vehicle and Traffic Law, § 1801).
Almost immediately, the Legislature determined that the maximum penalty should be substantially increased (L 1960, ch 749). The legislation’s sponsor explained the need for his bill: "The recent increase in the number of arrests for driving while intoxicated requires legislation that will act as a deterrent to future violators.” In his view, the new sentencing option would give the "Judge a free hand to impose such *215 punishment as would be commensurate with the crime”.[5] In approving the 1960 act, Governor Rockefeller explained that the "measure recognizes the seriousness of driving while intoxicated and * * * that these changes in penalty are appropriate.”[6]
The free hand that the 1960 legislation sought to allow the Judge is still essential today. Despite the fact that the Legislature now allows New York residents with the permission of the court and the Department of Motor Vehicles to enter into an alcohol rehabilitation program (Vehicle and Traffic Law, § 521), it has not chosen to amend the court’s very different sentencing options set out by the 1960 legislation when such a program is not utilized. Thus, a person convicted under subdivision 1 of section 1192 can only be fined $50 or sentenced to 15 days in jail, or given a conditional discharge, while the maximum fine under subdivision 2 of section 1192 is $500, with a jail term of one year or three-year probation possible.
2. THE LEGISLATURE’S DETERMINATION THAT A HIGH BLOOD-ALCOHOL CONTENT SHOULD BE A PER SE VIOLATION OF THE LAW
The legislation enacted in 1960 continued in effect for 10 years. Governor Rockefeller described the law in effect in 1970 as providing "that the presence of this [.15 per cent] level of alcohol is merely prima facie evidence of intoxication and makes the determination of intoxication one of subjective judgment.”[7] He sought new legislation. The Governor explained that "existing provisions have not been sufficiently effective in getting drunk drivers off the road and in deterring others from driving while under the influence of alcohol.”[8]
Accordingly, Governor Rockefeller sought legislation which "strengthens the provisions of the Vehicle and Traffic Law relating to driving while under the influence of alcohol by making it a misdemeanor for one to operate a motor vehicle when the alcohol content in his blood exceeds 0.15 percent.”[9] *216 The Governor stated that under the new legislation ".15 per centum or higher * * * would, in itself, establish a violation” of the law.[10]
In explaining the need for this legislation, the Governor relied on a "recent study” which "showed that approximately 44 percent of the drivers involved in fatal accidents in New York had a blood-alcohol content in excess of the extremely high level of 0.15 percent.”[11] He also reported data from another recent study which showed why blood-alcohol in excess of .15 was indeed "extremely high.” That study demonstrated that "the average 150 pound person who had not had a meal within four hours must drink eight one-ounce drinks of 80 proof liquor to attain a blood alcohol level of 0.15 percent, and ten drinks if he has had a full meal within that time. The average 200 pound person would need ten drinks if he has not eaten and thirteen drinks if he has.”[12]
The Governor pointed out: "The concept of making it unlawful per se to drive a motor vehicle with blood alcohol content in excess of .15 per cent by weight of alcohol is patterned after successful programs in England and Scandinavia for effectively dealing with problem drinkers on the highway. It is expected that a reduction in highway injuries and deaths can be achieved with the assistance of this program.”[13]
The Legislature evidently agreed with the Governor’s concern and the operation of a vehicle with blood-alcohol of .15% became a per se violation of the law.
3. THE LEGISLATURE’S DETERMINATION TO LOWER THE BLOOD-ALCOHOL WHICH CONSTITUTES A PER SE OFFENSE
The Legislature remained disturbed at the high accident tolls involving intoxicated drivers. In 1971, bills were introduced to provide that evidence of blood-alcohol below .15 would be ’’prima facie evidence that such person was in an intoxicated condition”[14] (1971, S.27-B, A. 31). The statute finally enacted by the Legislature provided that blood-alcohol content of .12 or over would constitute a per se offense (L *217 1971, ch 495). The memorandum by Senator John D. Caemmerer prepared at that time explains the reasons for the Legislature’s concern. "A report by the Department of Police Administration of Indiana University in 1968 noted that when the concentration [of blood-alcohol] reaches .06 percent, the probability of causing an accident is twice as great as for an alcohol-free driver; at .10 percent, the probability is six times greater. At .15% it becomes 25 times greater than if the driver’s body were essentially alcohol-free.”[15]
A further change was proposed the next year. In his memoranda supporting that change, Senator Caemmerer pointed out that "Scandinavian traffic fatalities were reduced 50% when the blood level was set at ,08.”[16] "Federal regulations establishing the standard for drunk drivers at .10 recommends that all states enact legislation pursuant to its regulation because of the ever increasing death toll on U.S. highways.”[17] The law finally enacted in 1972, to become effective January 1, 1973, further reduced the blood-alcohol percentage which would constitute a per se offense to .10% (L 1972, ch 450). This is the statute as presently constituted.
4. THE LEGISLATIVE TREND AND PURPOSE
We find then the following legislative trend with respect to subdivision 2 of section 1192:
YEAR BLOOD-ALCOHOL EFFECT
1960-1970 .15 prima facie evidence
1971 .15 per se
1972 .12 per se
1973 to date .10 per se
The Legislature’s purpose is clear. It has sought to insure that drivers with a specified blood-alcohol content are charged with a misdemeanor, and that upon conviction Judges be given broad discretion to determine the appropriate sentence.
Certainly it would be understandable if the People were concerned that a jury might not convict someone with precisely .10% of alcohol in his blood. Accordingly, the People must be given some discretion to consent to a lesser plea in *218 such a situation. But in a case, such as that here, the court cannot in fairness to the public permit such a gross deviation from the clear demands of the Legislature.
Ill
THE COURT HAS THE POWER TO REFUSE THE LESSER PLEA AND IT IS APPROPRIATE TO EXERCISE THAT POWER HERE
A. THE COURT’S POWER
CPL 220.10 (subd 4) provides that: "the defendant may, with both the permission of the court and the consent of the people, enter a plea of guilty of a lesser included offense.”[18]
The language of CPL 220.10 is clear on its face. The permission of the court is essential to the entry of a plea of guilty to a lesser offense. There is nothing in CPL 220.10 suggesting that the court is required to accept such a plea in all cases or in all of a certain type of case. Nor is there any constitutional right to have such a plea accepted.
That "there is no absolute right to have a guilty plea accepted” is the posture taken by courts throughout this State, including the Appellate Division for the Second Judicial Department. See People v Selikoff (41 AD2d 376, 378, affd 35 NY2d 227, cert den 419 US 1122), where the court in reaching its conclusion relied on Lynch v Overholser (369 US 705, 719), where the Supreme Court of the United States made clear that a criminal defendant has no "absolute right to have his guilty plea accepted by the court * * * the trial judge may refuse to accept such a plea and enter a plea of not guilty on behalf of the accused.” The court in Selikoff also relied on Santobello v New York (404 US 257, 262), where the Supreme Court had explained: "There is, of course, no absolute right to have a guilty plea accepted [citations]. A court may reject a plea in exercise of sound judicial discretion.” (See, also, People v Butler, 46 AD2d 422, 426; People v Venable, 46 AD2d 73, 81.) And see, People v Gardner (78 Misc 2d 744, 754), which while pointing out that plea bargaining is "an essential part of the process in the administration of criminal justice” held that an accused does not "have an absolute right to have a guilty plea accepted.”
See, also, the statement by Chief Judge Breitel that "[t]he *219 court has a discretion in determining * * * the lesser plea it may accept” (27 U of Chi L Rev, 427, 428).
The American Bar Association Project on Standards for Criminal Justice, in both its Standards on the Function of the Trial Judge and Standards on Pleas of Guilty, recognizes the court’s discretion to accept or reject a plea. Section 4.1 of the Standards on the Function of the Trial Judge states:
"(c) If the plea agreement contemplates the granting of charge or sentence concessions by the trial judge, he should: * * *
"(ii) give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence "concessions”.
This "independent decision” or "discretion” is not simply empty words, as is shown by the next subsection of these Standards. It is there stated that the Judge should: "(iii) permit withdrawal of the plea (or, if it has not yet been accepted, withdrawal of the tender of the plea) in any case in which the judge determines not to grant the charge or sentence concessions contemplated by the agreement.”
Section 3.3 of the Standards on Pléas of Guilty similarly provide: "(c) When a plea of guilty or nolo contendere is tendered or received as a result of a prior plea agreement, the trial judge should give the agreement due consideration, but notwithstanding its existence he should reach an independent decision on whether to grant charge or sentence concessions”.
The Judicial Conference of the State of New York, while recognizing the importance of plea bargaining, clearly acknowledges that the Judge has a role in this process.
Its memorandum, dated January 10, 1973, states: "Moreover, upon request of the parties, and after a full explanation of the terms of the disposition tentatively agreed to by the parties, it is our view that the judge should indicate the extent to which he concurs with the proposed disposition, subject to any new facts in the presentence report which would impel further consideration and, perhaps, a different disposition.”
B. IT IS APPROPRIATE FOR THE COURT TO EXERCISE ITS DISCRETION HERE
In view of the legislative history discussed (supra), this court is impelled to exercise its discretion and reject the plea offered *220 here. The Legislature has been most concerned with evidence as to the effect that large quantities of alcohol have on a driver. Accordingly, the Legislature has increased the scope of the Judge’s power to punish for such offense. It also has provided that the offense is a per se offense, so as to eliminate the uncertainty that prima facie tests invariably create. Originally, the per se offense was established only by a relatively high level of blood-alcohol, but the Legislature has repeatedly lowered the alcohol level requisite for conviction. To reduce the charge here to "impaired,” rather than try defendant for the offense charged, would vitiate the Legislature’s enactments, and make a mockery of the concern of the Legislature and Governor in enacting the law involved here, and also limit the scope of the sentence the court can impose upon conviction.
As the Appellate Division recognized in People v Griffith (43 AD2d 20, 23), the court should refuse a plea "if the agreement reached would 'tie the hands of the court’ in that the scope of sentence provided is inadequate for the crime and the defendant involved.” The Court of Appeals in People v Selikoff (35 NY2d 227-233, cert den 419 US 1122, supra), while explaining, at length, the importance of plea bargaining in the administration of criminal justice stated: "Perhaps most important, plea negotiation serves the ends of justice. It enables the court to impose 'individualized’ sentences, an accepted ideal in criminology, by avoiding mandatory, harsh sentences adapted to a class of crime or a group of offenders but inappropriate, and even Draconian, if applied to the individual before the court”.
Here, the People consent to the plea not as an isolated instance to permit an individualized sentence, but apparently as part of a common practice. To accept the plea would not permit an appropriate individualized sentence. The ends of justice which the court sought to serve in Selikoff probably could not be achieved. If this court accepted the plea, it could impose a fine of only $50, less than that it has imposed in a number of speeding cases. Any conditional discharge that the court might impose probably would have little meaning. The defendant is not even a resident of the area and the court would have little knowledge of such a defendant’s adherence to any terms of such discharge. Furthermore, the maximum fine of $50 which the court could impose if the court nonetheless determined that a defendant failed to observe the terms *221 imposed by the court is, in this court’s view, hardly likely to encourage adherence to any such terms. Parenthetically, the court notes, that although it does not base its decision on possible action by the Department of Motor Vehicles of this State or the department of another State, the administrative remedies which apparently will be imposed on a nonresident if a plea to the lesser oifense is accepted, would not be very likely to deter someone in the future from committing the oifense charged here. If the plea to the lesser oifense is accepted, those administrative remedies would permit a defendant to drive again in New York in 60 days and probably continue driving in his home State. Accordingly, if the court were forced to accept the lesser plea requested, the court might, in view of the limited fine permissible for driving while impaired, and the fact that probation is also not available for a violation, have to consider imprisoning the defendant — that perhaps would be "Draconian.” Yet if rehabilitation and deterrence are to be the purpose of the sentence, the court may have no viable alternative.
Conversely, if the court rejects the plea and defendant subsequently is convicted under subdivision 2 of section 1192, the court can impose a fine of $500 or put defendant on probation. Probation would be more likely than conditional discharge to insure that a nonresident defendant, although ineligible for New York’s alcohol rehabilitation program, actually take other steps which will help him to avoid in the future any misstep of the type charged here. Further, in view of the court’s sentencing options under subdivision 2 of section 1192 (the heavy fine and lengthy imprisonment), it is more likely that a defendant will adhere to the terms of probation set out by the court.
The consequences of a determination of guilt as to the misdemeanor charged are not "Draconian.”
It must be remembered that "[w]hen pleas are negotiated, the important purposes to be served are fairness to the pleading defendant and to the public” (State of New Jersey v Taylor, 49 NJ 440, 455-456).
C. CONTRARY PRACTICE, IF ANY, DOES NOT ABROGATE THE court’s DUTY HERE
The court has been advised that if there has been no serious two-car accident and if a defendant has not previously been convicted of a violation of section 1192, the common practice, *222 throughout Westchester County and some adjoining counties, is to accept pleas in a situation such as that posed here. It is clear that even if there is such a common practice, the legislative intention to give the trial court a role in accepting or rejecting a plea cannot be vitiated by the practice of accepting such pleas. In Matter of Blumberg v Lennon (44 AD2d 769), the Village Justice accepted a lesser plea in the absence of express consent by the District Attorney. The court held that the acceptance of the lesser plea was inappropriate and must be reversed. Its reasoning is enlightening. In that case (p 769) it "was argued that it is common practice in Herkimer County for such a reduced plea to be accepted by a Justice without objection from the District Attorney” and that the District Attorney did not advise the court for five weeks that the plea was unacceptable. The court explained (p 769): "the statutory requirement of consent by the People to the acceptance of a reduced plea can hardly be obtained by estoppel against the District Attorney on the basis of his alleged negligence or indifference. Even an express consent by the District Attorney to the acceptance of such a reduced plea in one case (and there is no assertion that the District Attorney has ever so consented in a case of this sort) would be no indication of his consent to accept such a plea in another case. The statute may not be so read. In the absence of express consent by the District Attorney to the acceptance of a reduced plea in a specific case, the court is without jurisdiction to accept such a plea.”
Similarly, in Matter of Murtagh v Maglio (9 AD2d 515, 520), the Appellate Division for this department held that the failure to obtain the consent of the District Attorney before reducing charges "was without warrant in law. Even if it be assumed that respondent’s action was taken, as was contended, in accordance with a common practice in the City Magistrates’ Courts”.
The equal protection clause of the Constitution does not require this court to follow the pattern allegedly accepted by other courts. The Appellate Division for this department did not express any concern with "equal protection” in its decision in Matter of Murtagh v Maglio (supra). Refusals to permit plea bargaining by reason of legislative mandates have been upheld in cases directly raising claims under the equal protection clause. Thus, in People v Bullock (80 Misc 2d 73, 78-79), the court pointed out that "approval of the propriety of *223 plea bargaining does not create a constitutional right for a defendant to be able to engage in such bargaining.” Accordingly, it rejected defendant’s argument that it was a denial of "equal protection of the laws” for him to be precluded from entering into a plea bargain if other defendants could do so. See, also, People v Butler (46 AD2d 422, 426), where the court held it was not a denial of due process to prohibit a defendant from pleading guilty to a misdemeanor in lieu of a particular felony charge. Apparently defendant did not rely on the equal protection clause to support this claim. He relied on that clause, however, to support his related contention that mandatory imprisonment was improper since others committing the same crime were not necessarily imprisoned. This claim was also rejected.
D. THE COURT IS BOUND BY LEGISLATIVE MANDATES.
The Legislature’s judgment that .10 blood-alcohol is a per se violation of the law and punishable as a misdemeanor must be observed, especially in view of the legislative history of subdivision 2 of section 1192. In Bullock and Butler (supra), the court held plea bargaining to be precluded because of legislative mandates. As the court in Bullock (80 Misc 2d 73, 75) explained the Legislature’s role: "This court, even if it felt that perhaps a different statute were preferable, cannot substitute its judgment for that of the Legislature if the statute enacted by the Legislature does not violate the Constitution”.
In People v McNair (46 AD2d 476, 478), the court said: "Historically, our system of government has recognized the function of the legislative branch to define crimes and prescribe punishments and that such questions are in the first instance for the judgment of the Legislature alone”. That court further pointed out that "courts ordinarily have no power to substitute their opinions for the judgment of the Legislature” (ibid). And see, People v Venable (46 AD2d 72, 75, supra), where the court stated: "It is well established that the wisdom, necessity or efficacy of legislation are not matters to be considered by the courts.”
IV
CONCLUSION
In view of the clarity with which the Legislature has spoken in establishing that blood-alcohol in excess of .10% is a per se *224 offense, this court feels bound to follow the law. The court determines that it is inappropriate to accept the plea offered since defendant is charged with blood-alcohol substantially in excess of .10%. The court should not substitute its judgment for that of the Legislature and thereby vitiate the express language of subdivision 2 of section 1192 of the Vehicle and Traffic Law and the Legislature’s intent in enacting that law. Accordingly, the plea is rejected.

. He is also charged, as a result of the same incident, with driving while in an intoxicated condition in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law. Since a conviction for a violation of both subdivisions 2 and 3 of section 1192 cannot result in a separate punishment for each violation, the court’s refusal to accept a lesser plea for the violation of subdivision 2 of section 1192 makes it unnecessary to consider the appropriateness of accepting a lesser plea to subdivision 3 of section 1192.

. The consent of the People to the entry of the plea to the lesser offense is not grounded on the existence of any question concerning the administration of the standard test given to defendant. The ground urged for acceptance is only that such pleas are always accepted in cases such as this, see infra.

. Section 1195 (subd 2, par [c]) specifically provides: "Evidence that there was more than .07 of one per centum but less than .10 of one per centum by weight of alcohol in his blood shall be prima facie evidence that such person was not in an intoxicated condition, but such evidence shall be given prima facie effect in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol.” (Emphasis supplied.)

. Under section 521 of the Vehicle and Traffic Law, a New York resident convicted of a violation of subdivisions 1, 2 or 3 of section 1192 may participate in an alcohol rehabilitation program with the permission of the Department of Motor Vehicles and the court, and this participation shall satisfy any fine or imprisonment imposed and permit an early resumption of driving privileges. Such program is apparently not open to Connecticut residents.

. Memorandum by Assemblyman Samuel Bonom, reported in NY Legis Ann, 1960, p 352.

. NY Legis Ann, 1960, p 539. This bill further provided for a new offense called “driving while ability is impaired.” The Governor explained that "The less serious offender ' * * can be charged with [this] new traffic infraction”.

. NY Legis Ann, 1970, p 483.

. NY Legis Ann, 1970, p 483.

. NY Legis Ann, 1970, p 482.

. NY Legis Ann, 1970, p 364.

. NY Legis Ann, 1970, p 482.

. NY Legis Ann, 1970, p 483.

. NY Legis Ann, 1970, p 365.

. Apparently, some proposals were to give prima facie effect to blood-alcohol at .10% and others to give such effect at .12%. (See, 1971, S.27-B A.31; NY Legis Ann, 1971, p 466.)

. NY Legis Ann, 1971, p 466.

. NY Legis Ann, 1972, p 289.

. NY Legis Ann, 1972, p 289.

. This provision is incorporated by reference in the prosecution of informations in local criminal courts by CPL 340.20.