Terry LOVELL, Mike FLUIATT, David BRITTON, Rick FIVEKILLER, Randall SIMMERMON, Sally BASWELL, Roger CARSON, Mike CORKRAN and P.W. HAWKINS *v.* STATE of Arkansas

CR  84-86                                678 S.W.2d 318

Supreme Court of Arkansas
Opinion delivered October 22, 1984
[Supplemental Opinion on Denial of Rehearing
December 21, 1984.]

426

*Joel W. Price,* for appellants.

*Steve Clark,* Att'y Gen., by: *Randel Miller,* Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The nine appellants were each found guilty of violating the Omnibus DWI Act of 1983. The sentences of appellants Carson, Corkran, Fluiatt and Hawkins were enhanced because each had a prior conviction. The other appellants were sentenced as first offenders. These appeals come to this court under Rule

29(1)(c) and are consolidated pursuant to Rule 3, A.R.App.Pro. because common questions of law are involved. We affirm the convictions of those appellants sentenced as first offenders but reverse the convictions of those given enhanced sentences.

Over the objections of appellants Carson, Corkran, Fluiatt and Hawkins, the trial court admitted certificates of prior convictions into evidence and, on the basis of the prior conviction documents, punishment was enhanced. None of the documents reflect that appellants were represented by counsel at their prior trials. The ruling was erroneous. A prior conviction cannot be used collaterally to impose enhanced punishment unless the misdemeanant was represented by counsel or validly waived counsel. *Baldasar v. Illinois*, 446 U.S. 222 (1980); *State v. Brown*, 283 Ark. 304, 675 S.W.2d 822 (1984). Waiver of counsel may not be presumed from a silent record. *McConahay v. State*, 257 Ark. 328, 516 S.W.2d 887 (1974). Accordingly, we reverse and remand the cases of these four appellants.

Since appellants Carson, Corkran, Fluiatt and Hawkins will be retried, we will also address another point of this appeal which will again arise at their new trials. These four appellants' prior convictions were for violating the older statutes relating to driving while under the influence of intoxicants, Ark. Stat. Ann. §§ 75-1027 through 1031.1. Under these older statutes, there was a presumption that one was under the influence of intoxicants if his blood alcohol content was .10% or more. The 1983 statute has made driving with a blood alcohol content of .10% or more illegal, per se. Appellants argue that there is a difference between driving while under the influence of intoxicants and driving while intoxicated, and that a prior conviction for driving while under the influence should not be counted as a prior offense for driving while intoxicated. There is no merit in the argument. Both laws declare that drivers with a blood alcohol content of .10% or more constitute a threat to public safety. The legislative intent under the Omnibus DWI Act of 1983 was to enhance penalties by using convictions under the older act. § 75-2501(b) states in pertinent part:

... all pleas of guilty and nolo contendere and all findings of guilty of driving while intoxicated within three (3) years prior to the effective date of this Act shall be counted in determining the number of prior offenses for the purposes of enhancing the penalties provided by this Act. . . .

The above part of the act uses the word intoxicated rather than under the influence. However, § 75-2502 (a) defines intoxicated as "influenced or affected by the ingestion of alcohol . . ." The emergency clause also demonstrates the legislative intent;

It is hereby found and determined by the Seventy-Fourth General Assembly that the act of driving a motor vehicle *while under the influence of intoxicating alcoholic beverages* or drugs constitutes a serious and immediate threat to the safety of all citizens of the State . . . (emphasis added.).

Therefore, upon retrial, previous convictions for driving while under the influence of intoxicants may be used as prior offenses for enhancement purposes under the 1983 act.

All appellants raise other points of appeal. They contend that the failure of the state to preserve samples of their breath tests for later testing constitutes a denial of their right to due process. This argument also is without merit. The Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath analysis tests at trial. *California* v. *Trombetta,* ___ U.S. ___ , 104 S.Ct. 2528 (June 11, 1984). Appellants additionally contend that the failure to preserve the samples denied them their Sixth Amendment confrontation rights. However, since neither citation of authority nor convincing argument is given and since it is not apparent without further research that the point is well taken, we do not consider the issue. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977).

Appellants next contend that the Omnibus DWI Act of 1983, Act 549, Ark. Stat. Ann. §§ 75-2501 through 75-2514, is unconstitutional on its face and as applied. They make four arguments of unconstitutionality. First, they argue that § 75-2503(b) establishes a conclusive presumption of guilt because it provides that it is unlawful for any person to drive with .10% or more by weight of alcohol in his blood.

The subsection does not lessen the state's burden of proof. Each defendant is presumed innocent until the state proves beyond a reasonable doubt that he is guilty of committing the prohibited act of driving with .10% or more alcoholic content in the blood. The state has a rational basis in protecting public safety and to that end the General Assembly has determined that a driver with a blood alcohol content of .10% or more constitutes a serious and immediate threat to the safety of all citizens. This act is simply a reasonable means of protecting the public safety. The appellants were innocent until the state proved beyond a reasonable doubt that the appellants were driving and that their blood alcohol measurement was .10% or more. *People v. Ziltz,* 98 Ill. 2d 38, 455 N.E.2d 70 (1983).

Second, appellants contend that the act is unconstitutional because the .10% standard of § 3 (b) is vague. Both the Fourteenth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution declare that no person shall be deprived of life, liberty or property without due process of law. It has been recognized for over 80 years that due process requires some level of definiteness in criminal statutes. Note, *Due Process Requirements of Definiteness in Statutes,* 62 Harv. L. Rev. 77, fn. 2 (1948). Due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. *State* v. *Bryant,* 219 Ark. 313, 241 S.W.2d 473 (1951); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U.Pa.L.Rev. 67, 68-69 (1960); Note, *Due Process Requirements of Definiteness in Statutes,* 62 Harv. L. Rev. 77-78 (1948).

The subsection setting .10% as the standard meets both

requirements. First, it gives a fair warning of the prohibited conduct. Due process requires only fair warning, not actual notice.

> Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.

*McBoyle* v. *United States,* 283 U.S. 25, 27 (1931).

The standard is the same in Arkansas. *Trice* v. *City of Pine Bluff,* 279 Ark. 125, 129, 649 S.W.2d 179 (1983). The subsection fairly warns a person of ordinary intelligence that he is in jeopardy of violating the law if he drives a vehicle after consuming a quantity of alcohol. Second, a clear standard is set for police enforcement. In addressing the same issue, the California Supreme Court stated:

> . . .[T]he statute could not be more precise as a standard for law-enforcement. (Freund, *The Use of Indefinite Terms in Statutes* (1921) 30 Yale L.J. 437, 437.) It gives no discretion whatever to the police, and thus is not susceptible of arbitrary enforcement. . . . Indeed, the very precision of the standards assures the statute's validity in this respect. (Cf. Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* (1960) 109 U.Pa.L.Rev. 67, 90-91.) (citation omitted)

*Burg* v. *Municipal Court,* 673 P.2d 732, 740 (Cal. 1983).

Appellants' third argument is that the act is an unconstitutional violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article 2, Sections 8 and 10 of the Constitution of Arkansas because the .10% standard of § 3 (b) is arbitrary, capricious and unreasonable. They contend that there is no legal or scientific basis for the legislative determination that .10% blood alcohol content constitutes a dangerous level of alcohol.

The state has broad police powers to protect its citizens from real dangers. Driving while intoxicated is such a real danger. *South Dakota* v. *Neville,* ___ U.S. ___ , 74 L. Ed. 2d 748 (1983). The only issue is whether driving with a blood alcohol measurement of .10% or more scientifically bears a reasonable relationship to the legitimate state interest in protecting the safety of its citizens. The California Supreme Court has clearly answered the question:

> . . . Scientific evidence and sad experience demonstrate that any driver with 0.10 percent blood alcohol is a threat to the safety of the public and to himself. (Gray, Attorney's Textbook of Medicine (3d ed. 1983) §§ 133.52-133.52(3) [all individuals suffer impairment at 0.10 percent blood-alcohol content]; *State* v. *Franco,* supra, 96 Wash. 2d 816, 639 P.2d 1320, 1322 [abundant scientific evidence that at 0.10 percent blood alcohol all persons are significantly affected and will have lost at least one-quarter of their normal driving ability]; *People* v. *Lewis* (1983) 148 Cal. App. 3d 614, 617, 196 Cal. Rptr. 161; *People* v. *Schrieber* (1975) 45 Cal. App. 3d 917, 924, 119 Cal. Rptr. 812; *People* v. *Lachman* (1972) 23 Cal. App. 3d 1094, 1098, 100 Cal. Rptr. 710; *People* v. *Perkins* (1981) 126 Cal. App. 3d Supp. 12, 21, 179 Cal. Rptr. 431; *Greaves* v. *State,* supra, 528 P.2d 805, 807; *Coxe* v. *State* (Del. 1971) 281 A.2d 606, 607; Oversight into the Administration of State and Local Court Adjudication of Driving While Intoxicated: Hearings Before Subcom. on Courts of Sen. Com. on the Judiciary, 97th Cong., 1st Sess. (1981) Serial No. J-97-79, pp. 99-101 [hereinafter Hearings Before Subcom. on Courts] [statement of Dr. Roger P. Maickel, noting that typically vision impairment begins at 0.03-0.08 percent blood alcohol and becomes significant in all subjects at 0.10 percent; reaction-time impairment begins at 0.04 percent; judgment of distance, dimensions and speed at 0.08 percent; coordination and memory at 0.10 percent].) Section 23152, subdivision (b), represents a legislative determination to that effect. (Accord, *Greaves* v. *State,* supra, 528 P.2d 805, 807; *Coxe* v. *State,* supra, 281 A.2d 606, 607; *State* v. *Gerdes,* supra, 253 N.W.2d 335, 335-336; *State* v. *Clark*

(1979) 286 Or. 33, 593 P.2d 123, 126; *State v. Basinger*, supra, (1976) 30 N.C. App. 45, 226 S.E.2d 216, 218; *People v. Fox* (N.Y. Just. Ct. 1976) 87 Misc. 2d 210, 382 N.Y.S. 2d 921, 925-926; cf. *Erickson v. Municipality of Anchorage* (Alaska App. 1983) 662 P.2d 963, 969-970, fn. 3.) Indeed, the available scientific information would support an even lower figure. (Hurst, *Estimating the Effectiveness of Blood Alcohol Limits* (1970) 1 Behav. Research Highway Safety 87; Ross, Deterring the Drinking Driver (1982) pp. 2-3; Jones & Joscelyn, Alcohol and Highway Safety 1978, op. cit. supra, pp. 35-50; Hearings Before Subcom. on Courts, supra, pp. 99-101; Gray, Attorneys' Textbook of Medicine (3d ed. 1983) §§ 133.52-133.52(3). At least two states and several foreign countries have established standards between 0.05 percent and 0.08 percent. We have no difficulty concluding that the 0.10 percent figure fixed by section 23152, subdivision (b), is rationally related to exercise of the state's legitimate police power. (*Roberts v. State*, supra, 329 So.2d 296, 297.)

The .10% standard is reasonable and bears a direct relationship to the state's interest in protecting its citizens.

Appellants' fourth argument is that the act unconstitutionally allows the police officer, rather than the prosecuting attorney, to file the charge. On the misdemeanor cases before us on these appeals, the argument is without merit. However, we issue a caveat that the argument may well be meritorious in felony cases.

Article 2, Section 8 of the Constitution of Arkansas provides that no one shall be held to answer a criminal charge unless on the presentment or indictment of a grand jury except for those cases which the General Assembly shall make cognizable by Justices of the peace, or courts of similar jurisdiction. Justice of the peace courts and similar jurisdiction courts have jurisdiction only of misdemeanors. *See* Ark. Stat. Ann. § 22-709, 22-724 and § 22-801 (Repl. 1962). Amendment 21 provides that offense which had to be filed by grand jury indictment may now be filed by an information by the prosecuting attorney.

Since all appellants are charged with misdemeanors and since only felonies are required to be brought by indictment or information, the act, as applied to these appellants, does not violate the Constitution of Arkansas.

Appellants also argue that the act constitutes an unlawful delegation of judicial power to the administrative branch. The argument is predicated upon the act giving the Arkansas Department of Health the authority to select and approve the chemical tests for blood alcohol content.

The mere fact that the Department of Health selects the method of testing does not delegate to it the power to find one guilty. *State* v. *Melcher,* 655 P.2d 1169 (Wash. App. 1983). The sole authority to find a defendant guilty of violating this act remains with the judicial branch.

The appellants filed motions asking that their sentences be suspended. The trial court ruled that he did not have the authority to suspend their sentences since the sentencing provisions of the act are mandatory. §§ 75-2504 and 75-2505. Appellants contend that a general statute authorizes the trial court to suspend or probate sentences. *See* Ark. Stat. Ann. Title 41, Chapter 12 (Repl. 1977 and Supp. 1983). The trial court was correct because where a special act applies to a particular case, it excludes the operation of a general act upon the same subject. *Saline County* v. *Kinkead,* 84 Ark. 329, 105 S.W. 581 (1907).

The appellants do not argue, and we do not consider, the constitutionality of the provision stating that judges may not suspend execution of sentences.

Affirmed in part; reversed in part.

Supplemental Opinion on Denial of Rehearing
Delivered December 21, 1984

DARRELL HICKMAN, Justice. The trial court held the sentencing provision of the Omnibus DWI Act to be mandatory; that is, where imprisonment is required, such a sentence cannot be reduced or suspended by the judge. We unanimously upheld this decision, following the clear language of the act which reads:

75-2504 Imprisonment for first and subsequent offenses.

(a) Any person who pleads guilty, nolo contendere or is found guilty of violating Section 3 [§ 75-2503] of this Act *may*, for a first offense, be imprisoned for no less than twenty-four (24) hours and no more than one (1) year (except that the court may order public service in lieu of jail and in such instance the court *shall* include the reasons therefor in its written order of judgment).

(b) Any person who pleads guilty, nolo contendere or is found guilty of violating Section 3 of this Act *shall be imprisoned:*

(1) for no less than seven (7) days and no more than one (1) year for the second offense occurring within three (3) years of the first offense;

(2) for no less than ninety (90) days nor more than one (1) year for the third offense occurring within three (3) years of the first offense;

(3) any person who pleads guilty, nolo contendere, or is found guilty of violating Section 3 of this Act for the fourth or subsequent offense occurring within three (3) years of the first offense *shall be* guilty of a felony punishable by imprisonment for at least one (1) year but not more than six (6) years. (Italics supplied.)

On rehearing some of our members have changed their minds. There could be nothing more plain in the legislative intent that the purpose of the act is to take from the judges certain discretionary powers and to impose mandatory sentences. Paragraph (a) uses the word "may" and undoubtedly we all accept the meaning of that word to mean "may;" paragraph (b) says "shall be imprisoned" and that statement is just as unequivocal.

One reason for the act is that the judges have not enforced the prior law, even though parts of it were mandatory. Those provisions were often avoided by allowing a reduction of a charge, or jailing on weekends or at the convenience of the defendant.

In this act, the power to reduce a charge was taken from the judges and imprisonment was made mandatory. Section 75-2505 states that a person *"shall be* fined." Section 75-2506 states that a court *"shall* not pronounce sentence until receipt of the presentence report." Section 75-2509 states [h]ereafter, *no circuit judge nor municipal judge may utilize the provisions* of Act 346 of 175 in instances where the defendant is charged with violating Section 3 [§ 75-2503] of this Act." Section 75-2510 (a) states [e]very magistrate or judge of a court *shall* keep or cause to be kept a record of every violation of this Act presented to said court, and *shall* keep a record of every official action by said court. . . ." Section 75-2510 (b) states "every said magistrate of the court or clerk of the court *shall* prepare and *immediately forward to the Office of Driver Services* an abstract of the record of said court. . . ." Section 75-2511 states "[u]pon arraignment the judge *shall* issue such person a temporary permit to expire on the date of the trial." Section 75-2512 states a person who drives after suspension or revocation of their license *"shall* be imprisoned for ten (10) days." (Italics supplied.)

The drafters of the criminal code recognized that there may be statutes later enacted which have their own penal provisions, unaffected by the criminal code. Ark. Stat. Ann. § 41-901 (1) (e) (Repl. 1977), which classifies felonies

and their respective punishments, expressly deals with this situation and its commentary states: "Subsection (1) (e) would also apply if a future legislature, either intentionally or accidentally, enacts a felony statute *that includes its own penal provision."* (Italics supplied.) The legislature did not have to even refer to the criminal code to make certain sentences mandatory. The Omnibus DWI Act can stand alone in this regard.

Could a law be more plain that the legislature wanted it unmistakeably clear certain things were mandatory? The legislature, not the courts, decides what is a crime and, within limits, what a sentence will be. So long as those sentences are not unconstitutional for some reason, it is our duty to enforce those laws. To do otherwise in this case would be to subvert a clear prerogative of the legislature.

HUBBELL, C.J., PURTLE and DUDLEY, JJ., concur.

JOHN I. PURTLE, Justice, concurring. I agree with Mr. Justice Dudley's concurring opinion. However I wish to point out two additional statutes which support his conclusion. Arkansas Stat. Ann. § 41-803 (1) (Supp. 1983) states: "No defendant convicted of an offense shall be sentenced otherwise than in accordance with this Article." Arkansas Stat. Ann. § 41-1201 (1) (Repl. 1977) states in part: "If a defendant pleads or is found guilty of an offense other than capital murder, murder in the first degree, murder in the second degree, first degree rape, kidnapping or aggravated robbery, the court may suspend imposition of sentence or place the defendant on probation."

The majority now reads "D.W.I." into the exceptions. I believe the General Assembly would have changed Ark. Stat. Ann. §§ 41-803 (1) and 41-1201 (1) if there had been an intent to do away with the present sentencing options available to the courts. Therefore, I am of the opinion that the courts should not be legislatively restrained by this court.

The majority correctly quotes from the statute here in question and it clearly states a person found guilty *may* be imprisoned on a first offense for up to one (1) year. That provision is plainly discretionary.

ROBERT H. DUDLEY, Justice, concurring. I concur in the vote denying a rehearing but, if granted the authority by the court, I would modify the last paragraph of the opinion. Upon reconsideration, I find that that part of the opinion relating to suspension of sentences is incorrect.

Prior to the Omnibus DWI Act of 1983 trial judges had the authority to suspend imposition of any sentence, see Ark. Stat. Ann. § 41-1201 (Repl. 1977 and Supp. 1983) or to suspend execution of sentence. See Ark. Stat. Ann. § 43-2326 as re-enacted by § 43-2331 (Supp. 1983). The 1983 DWI Act does not expressly repeal the trial judge's authority to use either of the above cited statutes. Instead, it only eliminates the trial judge's authority to utilize the First Offender Expungement Act, an act which authorizes the expungement of convictions. See § 9 of the DWI Act, § 75-2509 and the Expungement Act, § 43-1231. Prior to the 1983 DWI Act there was a mandatory sentencing requirement in the DWI laws. See Ark. Stat. Ann. § 75-1029.2 (Repl. 1977). This mandatory sentencing requirement was specifically repealed in Section 19 of the 1983 Act. The new act has no similar statement mandating serving of sentences. Although Section 4(b) of the Omnibus Act, § 75-2504(b), provides that persons found guilty "shall be imprisoned", this language does not by implication repeal the specific statutory authority of judges to suspend imposition or execution of sentences.