Opinion
FAINER, P. J.
Defendant appeals from his judgment of conviction of having violated Vehicle Code section 23102, subdivision (a) (driving under the influence of alcohol). He raises many arguments on appeal, several of which require extended discussion, especially those pertaining to the jury instructions relating to the admissibility of the results of defendant’s blood alcohol tests administered just after the offense.
The claim that defendant was improperly detained is wholly without merit. He was observed driving 20 miles per hour in a 40-mile-per-hour zone, weaving abruptly from one side of his lane to the other. This is certainly sufficient justification for an officer to stop a driver and make further inquiry into his sobriety. (In re Tony C. (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; Cornforth v. Department of Motor Vehicles (1970) 3 Cal.App.3d 550, 552 [83 Cal. Rptr. 762].)
*1101 After defendant was unable to adequately perform his field sobriety tests and displayed the objective “drunk driving” symptoms of slurred speech, bloodshot eyes and a strong odor of alcohol on his breath, he was taken to a hospital for a blood test to determine the level of alcohol in his blood. Prior to trial, the People were ordered to provide him with a portion of the blood sample taken so that he could make his own independent analysis. The record on appeal indicates full compliance with this order and defendant does not contend otherwise. Neither is there any showing that the test results were in any way inaccurate. Nonetheless, defendant argues that the complaint should have been dismissed and the test results suppressed because the People destroyed records pertaining to the repair or maintenance of the testing machine. Failing that, he claims that the jury should have been instructed to disregard the results if they found that the People had destroyed quality control records.
The first focus of this argument is People v. Hitch (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], which holds that a defendant is entitled to access to prosecution evidence (in that case, a breathalyzer test ampoule to determine- blood-alcohol level) once it has been demonstrated that there exists a reasonable possibility that the evidence might be favorably considered on the issue of guilt or innocence (12 Cal.3d, at p. 649). In the present case, defendant was given access to his blood sample and he did not ask for the reference sample. He seeks to extend the holding in People v. Hitch to require the dismissal of the complaint or the suppression of the test results because printouts from quality control samples are not retained by the Los Angeles Police Department and are thus unavailable to him in his attempt to attack the reliability of his own test readings.
The simple answer to this argument is that there was no showing on the appellate record presented to us that the printouts would have had any bearing on the test results or on defendant’s guilt or innocence. The only evidence on this issue was the testimony of David Margolis, a criminalist for the Los Angeles Police Department.
Margolis testified that the printouts were adjustment data which could not be called records within the meaning of title 17 of the California Administrative Code. They were a working tool which, according to Margolis, had no status at all and are not among the records which *1102 the testing unit is required to keep by state regulation.[1] Defendant offered no evidence to establish that the printouts could have an effect on the proof of his guilt or innocence. He attempted to make his argument by reference to a partial reporter’s transcript of another proceeding involving a different defendant and another judge where similar printouts were discussed. This other proceeding had no relevance to the present situation. (See People v. Merriam (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161]; People v. Jablon (1958) 165 Cal.App.2d 348, 350 [331 P.2d 772].)
As to the printout issue, defendant also contends that the People willfully failed to comply with the discovery order by their failure to produce the printouts. The discovery order included, among other things, the repair records (including routine checks), calibration, and recalibration of any machine or instrument used to test defendant’s blood for the period August 31, 1978, to August 31, 1979. Handwritten at the end of this discovery order item is the notation, “Maintenance record for 8-31-79 only.” The People responded by supplying the quality control checks for September 4, 1979. There is nothing to show that the quality control checks for September 4, 1979, did not include the records pertinent to August 31, 1979. The discovery order required the records for a 60-day period showing the washing, cleaning, sterilization or other treatment of any machine, instrument or tool used to test defendant’s blood. The People responded to this portion of the order by stating that there were no such records available. Defendant has not shown that there were or that there should have been any such records. Defendant merely argues that the requirements set forth in title 17 California Administrative Code, sections 1220.3, 1222.1, subdivision (a) and 1222.1, subdivision (a)(4)[2] are controlling. These requirements provide for the retention of records by the laboratory for a period of three *1103 years. Margolis testified that the printouts requested by defendant were not among the records required by the department of health. Defendant has presented no evidence to the contrary.
Even if the failure to keep the printouts were to be seen as a violation of title 17, defendant is mistaken in his claim that the trial court erred in refusing to instruct the jury to disregard the blood alcohol test results if they found that the Los Angeles Police Department destroyed records pertaining to the repair, maintenance or adjustment of the machine.[3] The proposed instruction v/ould be required if the provisions of Evidence Code section 403[4] were applicable, but we hold that Evidence Code section 403 is not applicable in this case.
*1104 Evidence Code section 403 is invoked whenever the relevancy of preferred evidence depends on the determination of a preliminary fact. If the jury does not find that the preliminary fact exists, they are instructed to disregard the evidence. If there were a question here about whether the blood that was tested was actually defendant’s blood, as was argued below, but abandoned on appeal, the test results would not be relevant to the proceedings unless the jury could reasonably find that it was, in fact, defendant’s blood. Such an instruction was properly given here.
As we point out in this opinion, relevancy of the blood-alcohol-test results is not an issue and the provisions of Evidence Code section 403 are not applicable when the claim is that all the title 17 requirements have not been met and the violation is not of constitutional dimension. (See People v. French (1978) 77 Cal.App.3d 511, 522 [143 Cal.Rptr. 782].) As long as there is no constitutional violation,[5] the jury is not to be instructed to disregard the results if the People have established that “(1) the particular apparatus utilized was in proper working order, (2) the test used was properly administered, and (3) the operator was competent and qualified.” (People v. Adams (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190].) The court in People v. Adams explained that failure to comply with the title 17 regulations goes to the weight of the evidence and that a defendant is entitled to attempt to discredit the test results by showing that noncompliance with the regulations affected those results (59 Cal.App.3d at p. 567; People v. French, supra, 11 Cal.App.3d 511, 522).
*1105 The conclusion that such tests are relevant is supported by both the language and the reasoning of People v. Adams, supra, 59 Cal.App.3d 559 and People v. French, supra, 77 Cal.App.3d 511, 522; see, also, People v. Rawlings (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651]. As explained in People v. French, supra, “We . .. are convinced that the Adams majority rule is the proper one. The rule permits the admission of highly relevant and competent evidence on the issue of intoxication, while at the same time safeguarding the defendant’s rights. Pursuant to the Adams rule, a defendant can attack the ‘credibility’ of the test by showing that normal testing procedures were not followed, the operator was not properly qualified, or that the machine was unreliable.” (77 Cal.App.3d at p. 522.) Further support for the conclusion that relevance is not in issue in blood-alcohol tests is found in the reference in People v. Adams, supra, to Evidence Code section 351, which states: “Except as otherwise provided by statute, all relevant evidence is admissible.” (59 Cal.App.3d, at p. 565.) Neither Adams nor People v. Rawlings, supra, at páge 956, which also cites Evidence Code section 351, indicates that blood-alcohol tests fall within any of the statutory exceptions to section 351. Consistent with our interpretation are People v. Palmer (1978) 80 Cal.App.3d 239, 253 [145 Cal.Rptr. 466, 1 A.L.R.4th 1056], and People v. Marx (1975) 54 Cal.App.3d 100, 111 [126 Cal.Rptr. 350, 77 A.L.R.3d 1108], which suggest that once a test has achieved general acceptance in the scientific community, any possibility of error goes to the weight of the evidence and not to its admissibility.[6]
Since Evidence Code section 403 is not applicable here, as to the preliminary or foundation facts, Evidence Code section 405 is. This section states as follows: “With respect to preliminary fact determinations not governed by Section 403 or 404:
“(a) When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the *1106 burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises.
(b) If a preliminary fact is also a fact in issue in the action:
(1) The jury shall not be informed of the court’s determination as to the existence or nonexistence of the preliminary fact.
(2) If the proffered evidence is admitted, the jury shall not be instructed to disregard the evidence if its determination of the fact differs from the court’s determination of the preliminary fact.”
The Evidence Code section 405 procedure was followed but not mentioned in the majority opinion in Adams and in French in that it provides that the jury is not to be instructed to disregard the evidence once it has been admitted. When considered in conjunction with Evidence Code section 406, section 405 appears to encompass the statutory basis for the rule that lack of compliance with title 17 of the California Administrative Code or questions about the Adams foundational requirements go only to the weight of the evidence. Evidence Code section 406 states: “This article does not limit the right of a party to introduce before the trier of fact evidence relevant to weight or credibility.” In combination, Evidence Code sections 405 and 406 permit the court to exclude the test results if there is no credible evidence of the foundational facts and the jury to consider any attacks on the foundational facts in determining the weight to be accorded the test results.
In light of this holding, the trial court did not err in refusing to instruct the jury to disregard the test results if they found that the People destroyed the printouts,.
Defendant’s additional claims of error may be quickly disposed of. There is no showing that defendant was denied his right to fully argue his case by the fact that Penal Code section 1093, subdivision 5 permits the People to argue before and after defendant makes his closing argument. (See In re William F. (1974) 11 Cal.3d 249, 255, especially fn. 5 [165 Cal.Rptr. 587].)
*1107 The trial court did not err in giving proposed CALJIC No. 16.831[7] instead of defendant’s proposed instruction based on People v. Dingle (1922) 56 Cal.App. 445 [205 P. 705]. (People v. Schoonover (1970) 5 Cal.App.3d 101, 106-107 [85 Cal.Rptr. 69].)
The claim that Vehicle Code section 23126 is unconstitutionally vague because it establishes a presumption that an individual is intoxicated when his blood alcohol level reaches .10 percent is totally without merit. This argument is based on the premise that one cannot be expected to know when his blood alcohol will reach a, level to invoke the statutory presumption. There is no showing, nor could there reasonably be, that a driver cannot tell when his or her sobriety has been affected to such an extent as to significantly impair driving ability. In addition, we point out that this code section has been determined not to be unconstitutional on the theory that there was no rational connection between the fact proved and the fact presumed or because the presumption procedure failed to fix an ultimate time as to a period in which the prescribed test must be taken or because the presumption violated or infringed upon a defendant’s presumption of innocence or right to remain silent. (People v. Schrieber (1975) 45 Cal.App.3d 917 [119 Cal.Rptr. 812].) Further, the presumption statute satisfies the constitutional requirements of due process because there is a long-recognized and scientific relationship between a drunk driving suspect’s blood alcohol levels and the degree of intoxication of a suspect. People v. Lachman (1972) 23 Cal.App.3d 1094 [100 Cal.Rptr. 710].
The judgment is affirmed.
Foster, J., and Jones, J., concurred.

The interpretation of a statute by an agency charged with its enforcement is controlling unless the interpretation alters or amends the statute or enlarges or impairs its scope. (Mooney v. Pickett (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231].) Here, there was no testimony to controvert the statutory interpretation testified to by Margolis and no indication that it was facially inconsistent with title 17. It is true that Margolis testified at one point that the printouts were records, but this testimony was later clarified to establish that they were not official records.

California Administration Code, title 17, section: “1220.3. Quality Control Program. (a) Methods for forensic alcohol analysis shall be performed in accordance with the following quality control program:
“(1) For each method of forensic alcohol analysis it performs, each forensic alcohol laboratory shall make or acquire a suitable quality control reference material containing alcohol, a sample of which it shall analyze along with each set of samples; the *1103 alcohol concentration in the reference material shall be between 0.10 and 0.20 grams per 100 milliliters of liquid;.
“(2) For each lot of quality control reference material, the laboratory shall determine a mean value of at least 20 replicate analyses, at a rate of no more than 2 analyses per day, with the method used for analysis of samples for forensic alcohol analysis;
“(3) Acceptable limits of variation for the method shall be set as follows:
“(A) The lower limit shall be calculated by subtracting, from the mean value, 0.01 grams per 100 milliliters;
“(B) The higher limit shall be calculated by adding, to the mean value, 0.01 grams per 100 milliliters;
“(4) At least one sample of the quality control reference material shall be analyzed with each set of samples analyzed for the purpose of forensic alcohol analysis;
“(5) Whenever analysis of the quality control reference material is outside the acceptable limits, the method shall be regarded to be in error, and a forensic alcohol supervisor shall take remedial action to investigate and correct the source of error;
“(6) Until such time as the error has been corrected, as shown by return of the analysis of the quality control reference material to values within the acceptable limits, no samples shall be analyzed for the purpose of forensic alcohol analysis.” California Administrative Code, title 17, section 1222.1: “Forensic Alcohol Laboratory Records, (a) Each laboratory which is licensed to perform forensic alcohol analysis shall keep the following records for a period of at least three years: ... (4) Records of the quality control program.”

Defendant’s proposed instruction stated as follows: “YOU ARE HEREBY INSTRUCTED that if 'you find that the Los Angeles Police Department destroyed records pertaining to the repair or maintenance or adjustment of the machine used to analyze the blood' of the defendant, you are to disregard any evidence from that machine purporting to establish the percentage of alcohol in the defendant’s blood and the opinion of any witness who relied on such evidence.”

Evidence Code section 403 states: “(a) The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when:
“(1) The relevance of the proffered evidence depends on the existence of the preliminary fact;
“(2) The preliminary fact is the personal knowledge of a witness concerning the subject matter of his testimony;
“(3) The preliminary fact is the authenticity of a writing; or
*1104 “(4) The proffered evidence is of a statement or other conduct of a particular person and the preliminary fact is whether that person made the statement or so conducted himself.
“(b) Subject to Section 702, the court may admit conditionally the proffered evidence under this section, subject to evidence of the preliminary fact being supplied later in the course of the trial.
“(c) If the court admits the proffered evidence under this section, the court:
“(1) May, and on request shall, instruct the jury to determine whether the preliminary fact exists and to disregard the proffered evidence unless the jury finds that the preliminary fact does exist.
“(2) Shall instruct the jury to disregard the proffered evidence if the court subsequently determines that a jury could not reasonably find that the preliminary fact exists.”

We note that it is unlikely that a defendant will be able to establish a constitutional violation based solely on the taking of a blood or breath sample. (See People v. Conterno (1959) 170 Cal.App.2d Supp. 817 [339 P.2d 968]; People v. Puccinelli (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534]; People v. Ryan (1981) 116 Cal.App.3d 168 [171 Cal.Rptr. 854].)

We respectfully decline to accept the interpretation of Justice Jefferson in his California Evidence Benchbook (1978 supp.) section 20.1, pages 166-167, that relevance of the blood-alcohol test is in issue until the Adams foundational requirements have been met. This interpretation does not appear to be consistent with the holdings of People v. Adams, supra, 59 Cal.App.3d 559 or People v. French, supra, 77 Cal.App.3d 511. Furthermore, such an approach would provide “the incentive to turn the drunk driving case into a contest to find a technical defect in the test procedure so as to have the evidence excluded.” This is precisely the result that People v. Adams sought to avoid. (59 Cal.App.3d, at p. 567.)

CALJIC No. 16.831 states as follows: “A person is [under the influence of intoxicating liquor] when as a result of drinking such liquor his physical or mental abilities are impaired to such a degree that he no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence, under the same or similar circumstances.”