61 Cal.Rptr.3d 15 (2007)
151 Cal.App.4th 1480
Jeffrey J. ARBURN, Plaintiff and Respondent,
v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.
No. H030127.
Court of Appeal of California, Sixth District.
May 10, 2007.
*16 Bill Lockyer, Attorney General, Miguel A. Neri, Fiel D. Tigno, Supervising Deputy Attorneys General, Bonnie Jaway Chen, Deputy Attorney General, for Defendant and Appellant.
Dennis Alan Lempert, Neah Huynh, Santa Clara, Plaintiff and Respondent.
MIHARA, Acting P.J.
Following an administrative hearing, appellant Department of Motor Vehicles (the DMV) suspended respondent Jeffrey J. Arburn's driving privileges for one year for driving a motor vehicle while under the influence of alcohol. (See Veh.Code, §§ 13353.2, 13353.3, subd. (b)(2).)[1] The superior court granted Arburn's subsequent petition and issued a writ of mandate directing the DMV to set aside the suspension. On appeal, the DMV contends the superior court erred in reversing Arburn's suspension on the grounds that the arresting officer did not have reasonable suspicion to stop Arburn's vehicle. We agree and reverse.

I. Background
On March 31, 2005, at approximately 5:00 p.m., San Jose Police Officer Lira was stopped at a stop sign eastbound on Forest at the Bascom Avenue intersection.[2] Turning to his left, Officer Lira saw Arburn's "vehicle weaving, S/B Bascom Ave. and almost hit the curb." Arburn's vehicle was "weaving in Lane # 2," and was "traveling at about the speed limit" when it "almost hit the west curb of Bascom Ave." Officer Lira pulled behind the vehicle as it passed in front of him and the car "immediately turned into a parking lot of a business." Officer Lira "initiated a vehicle stop for the weaving in the roadway."
Upon contacting Arburn, Officer Lira observed several objective symptoms of intoxication: bloodshot/watery eyes, the odor of an alcoholic beverage, unsteady gait, slurred speech, and horizontal nystagmus. Arburn "needed to lean on [the] police car at times to keep steady" and was "very slow in [his] responses." Officer Lira arrested Arburn for driving under the influence. On the way to the police station, Arburn began to fall asleep in the *17 back of the police car. A blood alcohol test administered one hour later confirmed a blood alcohol content of 0.23 percent, well over the legal limit of 0.08 percent. (See § 23152.) As a result of the blood test results, the DMV suspended Arburn's driver's license.
Arburn requested an administrative hearing pursuant to section 13558 to determine whether the suspension of his license was justified. (§ 13558, subd. (a); see also Lake v. Reed (1997) 16 Cal.4th 448, 456, 65 Cal.Rptr.2d 860, 940 P.2d 311 [describing right to hearing upon request and hearing process].) At the hearing, the administrative officer was tasked with determining: (a) whether the officer had reasonable cause to believe that Arburn had been driving a motor vehicle in violation of section 23152, (b) whether Arburn was lawfully arrested, and (c) whether Arburn was driving a motor vehicle with a blood alcohol content of 0.08 percent or greater. (§§ 13557, subd. (b)(2), 13558, subd. (c)(2).) Arburn challenged only the second statutory requirement  that he was not lawfully arrested  and contended that Officer Lira did not have sufficient cause to stop his vehicle. The hearing officer found all three statutory prerequisites met by a preponderance of the evidence and reinstated the suspension of Arburn's driving privileges.
On September 26, 2005, Arburn petitioned the superior court for review of the administrative findings. (See § 13559 [providing for judicial review of license suspension].) The court issued an alternative writ temporarily staying the suspension to consider Arburn's petition for writ of mandamus. At the hearing on the petition, the court found there was insufficient evidence to support the findings that the investigatory stop was justified. The court issued a writ of mandate directing the DMV to set aside its order suspending Arburn's driving privileges. The DMV filed a timely appeal.

II. Discussion
In ruling on a driver's petition for writ of mandamus, the trial court uses its independent judgment to determine "whether the weight of the evidence supported the administrative decision." (Lake v. Reed, supra, 16 Cal.4th 448, 456-457, 65 Cal.Rptr.2d 860, 940 P.2d 311, internal quotation marks omitted.) On appeal, the trial court's factual findings must be upheld if supported by substantial evidence. (Id. at p. 457, 65 Cal.Rptr.2d 860, 940 P.2d 311.) If the facts are undisputed and the issue presented is a question of law, as it is here, we conduct an independent review. (See Morgenstern v. Department of Motor Vehicles (2003) 111 Cal.App.4th 366, 372, 4 Cal.Rptr.3d 46; Payne v. Department of Motor Vehicles (1991) 235 Cal.App.3d 1514, 1517, 1 Cal.Rptr.2d 528.)
"Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity. Such reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." (People v. White (2003) 107 Cal.App.4th 636, 641, 132 Cal.Rptr.2d 371, internal citations and quotation marks omitted.) "Under this standard, an officer may stop and briefly detain a suspect for questioning for a limited investigation even if the circumstances fall short of probable cause to arrest." (Brierton v. Dept. of Motor Vehicles (2005) 130 Cal.App.4th 499, 509, 30 Cal.Rptr.3d 275 (Brierton).) The standard of reasonable suspicion is "less demanding than probable cause `not only in *18 the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'" (People v. Souza (1994) 9 Cal.4th 224, 230-231, 36 Cal.Rptr.2d 569, 885 P.2d 982.) At the same time, however, "no stop or detention is permissible when the circumstances are not reasonably `consistent with criminal activity and the investigation is therefore based on mere curiosity, rumor, or hunch." (In re Tony C. (1978) 21 Cal.3d 888, 894, 148 Cal.Rptr. 366, 582 P.2d 957 (Tony C.), superseded on other grounds by Cal. Const., art. I, § 28.)
Arburn first contends that a single weave or swerve presents insufficient cause to suspect an intoxicated driver. He argues that "the record is ambiguous as to whether the weave and the almost hitting the curb constituted one action," so this court must assume that it was. We are not persuaded by Arburn's interpretation of the record. Officer Lira reported "weaving" in the lane and that Arburn almost hit the west curb. The reasonable inference is not that Arburn's car swerved once, but that the vehicle was moving back and forth as it proceeded southbound and at one point narrowly missed the curb. More than one California court has found that "weaving" within a lane provides sufficient cause to conduct an investigatory stop. (See People v. Bracken (2000) 83 Cal.App.4th Supp. 1, 3-4, 99 Cal.Rptr.2d 481 (Bracken) [weaving within lane for one-half mile]; People v. Perez (1985) 175 Cal.App.3d Supp. 8, 10-11, 221 Cal.Rptr. 776 (Perez) ["`pronounced weaving' within the lane" for three-quarters of a mile; citing additional cases holding that weaving from one lane to another justifies an investigatory stop]; People v. Perkins (1981) 126 Cal.App.3d Supp. 12, 14, 179 Cal.Rptr. 431 [driving 20 miles per hour under speed limit and "weaving abruptly from one side of [the] lane to the other"]; see also People v. Russell (2000) 81 Cal.App.4th 96, 104, 96 Cal.Rptr.2d 568 [concluding summarily that fact that defendant was "drifting around in his lane" justified an investigatory stop].)
While we recognize factual differences between this case and those cited above, we are not persuaded they are legally significant. The absence in the record of information regarding the officer's particular expertise, for instance, is of minimal relevance. (Cf. Perez, supra, 175 Cal. App.3d Supp. at p. 11, 221 Cal.Rptr. 776 [noting that a trained officer should be "permitted to make inferences and deductions that might well elude an untrained person" and that the detaining officer in the case before it had seven and one-half years of experience]; Bracken, supra, 83 Cal.App.4th Supp. at p. 4, 99 Cal.Rptr.2d 481 [observing that detaining officer was an expert in driving under the influence cases].) Weaving within a lane is a widely-recognized characteristic of an intoxicated driver and recognizing a weaving driver is undoubtedly within the province of even the most junior officer. It is, we posit, even within the ability of most fellow drivers. The DMV's failure to relate the particular training and experience of the arresting officer thus does not prevent us from crediting the officer's reasoned inference that Arburn's erratic driving was the result of criminal activity.
Likewise, the lack of evidence that Arburn was observed weaving over a "substantial" or "considerable" distance does not prevent a finding of reasonable suspicion.[3] (Cf. Perez, supra, 175 Cal.App.3d *19 Supp. at p. 11, 221 Cal.Rptr. 776 [weaving within lane for a "substantial distance" sufficient justification for investigatory stop]; Bracken, supra, 83 Cal.App.4th Supp. at p. 4, 99 Cal.Rptr.2d 481 [following Perez; weaving within lane for a "considerable distance" supports reasonable suspicion].) "Weaving" for even the length of a block may signify that something is amiss, and the distance of observation is not a controlling factor in evaluating a traffic stop. In Perez, the issue presented was whether weaving over three-quarters of a mile (referred to as a "substantial distance") alone could provide sufficient justification for an investigatory stop. (Perez, supra, 175 Cal.App.3d Supp. at p. 10, 221 Cal.Rptr. 776.) The court found that it did, and had no cause to determine whether a shorter distance would be sufficient. (See id. at p. 11, 221 Cal.Rptr. 776.)
Arburn also stresses that there is a bend in Bascom Avenue at Naglee Road, one block north of where Officer Lira was stopped when he observed Arburn "weaving" and "almost hit the west curb." He claims that this accounts for any erratic driving on that block of road. We question Arburn's presumption that a mere bend in the road would cause an attentive, sober driver to be "weaving" in the lane to the extent that he or she almost hits the curb. More importantly, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (Tony C, supra, 21 Cal.3d at p. 894, 148 Cal.Rptr. 366, 582 P.2d 957.) "Even if the circumstances are as consistent with lawful activity as with criminal activity, the officer may still rightfully inquire into such circumstances in the proper discharge of the officer's duties." (Kodani v. Snyder (1999) 75 Cal.App.4th 471, 476, 89 Cal.Rptr.2d 362, quoting Tony C, supra, 21 Cal.3d at p. 894, 148 Cal.Rptr. 366, 582 P.2d 957, internal quotation marks omitted.)
The facts presented in this case support more than a mere "hunch" regarding criminal activity; Arburn's weaving and near miss of the curb created an immediate concern for public safety and raised a reasonable suspicion that he was driving under the influence. Officer Lira had the right and the duty to determine exactly what was causing Arburn's car to weave and whether he could continue driving without presenting a safety risk. (See Brierton, supra, 130 Cal.App.4th at p. 510, 30 Cal.Rptr.3d 275 ["The officer's duty is to resolve  through investigation  any ambiguity presented as to whether the activity observed is, in fact, legal or illegal"].) We conclude the superior court erred in reversing Arburn's suspension on the grounds that his detention was unlawful.

III. Disposition
The judgment granting Arburn's petition for writ of mandate is reversed.
I CONCUR: McADAMS, J.
DUFFY, J., dissenting.
The majority finds a sufficient record that San Jose Police Officer Lira had a reasonable suspicion to make the traffic stop that ultimately resulted in respondent *20 Jeffrey J. Arburn's arrest for driving under the influence. I respectfully disagree.
"[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (In re Tony C. (1978) 21 Cal.3d 888, 893, 148 Cal.Rptr. 366, 582 P.2d 957, superseded on other grounds by Cal. Const., art. I, § 28.) In determining the lawfulness of a temporary detention, courts look at the "`totality of the circumstances' of each case to see whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." (U.S. v. Arvizu (2002) 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740; see also People v. Souza (1994) 9 Cal.4th 224, 239, 36 Cal.Rptr.2d 569, 885 P.2d 982.)
The totality of the circumstances here do not justify the detention. The sole undisputed evidence  namely, Officer Lira's two written statements (one sworn and the other unsworn) presented at the Department of Motor Vehicles (DMV) hearing  was that on March 31, 2005, at 5:00 p.m., Officer Lira, while stopped at a stop sign on Forest Avenue (facing east) at the intersection of Bascom Avenue, observed (1) by looking to his left, that Arburn's vehicle was proceeding south on Bascom; (2) that Arburn was traveling "at about the speed limit"; (3) that Arburn's vehicle was "weaving in lane # 2, S/B from the controlled intersection at Bascom/Forest"; (4) that Arburn's vehicle "almost hit the west curb of Bascom Ave."; and (5) that Arburn "immediately turned into a parking lot of a business on the west side of Bascom Ave." after passing him. Officer Lira then initiated the traffic stop that ultimately led to Arburn's arrest.
But for the incomplete state of the record presented at the DMV hearing, I might well agree with my colleagues that the traffic stop was proper. However, the evidence supporting the detention omitted potentially important information, such as (1) the nature and extent of the officer's training and experience investigating cases of driving under the influence; (2) the specifics underlying Officer Lira's statement that he observed Arburn's vehicle "weaving" (i.e., the number of times that the car weaved, and the amount of drift within the lane for each weave); and (3) the precise meaning of the officer's observation that the vehicle "almost hit the west curb of Bascom Ave." (i.e., how close the vehicle came to hitting the curb, and the lateral distance that the vehicle drifted from the center of the lane to the location near the curb). All that may be gleaned from the record is that respondent, while proceeding at the speed limit, drove poorly for a brief period of time and over a short distance. In sum, this showing does not demonstrate that Officer Lira had "a `particularized and objective basis' for suspecting legal wrongdoing." (U.S. v. Arvizu, supra, 534 U.S. at p. 273, 122 S.Ct. 744.)
The majority cites four cases in which detentions were found to have been justified: People v. Bracken (2000) 83 Cal. App.4th Supp. 1, 99 Cal.Rptr.2d 481 (Bracken); People v. Russell (2000) 81 Cal.App.4th 96, 96 Cal.Rptr.2d 568 (Russell); People v. Perez (1985) 175 Cal. App.3d Supp. 8, 221 Cal.Rptr. 776 (Perez); and People v. Perkins (1981) 126 Cal. App.3d Supp. 12, 179 Cal.Rptr. 431 (Perkins). Although my colleagues acknowledge that there are factual differences between those cases and the circumstances here, they find them not to be legally significant. (Maj. opn. at p. 18.) I respectfully disagree with that conclusion.
*21 In Perez, supra, 175 Cal.App.3d Supp. 8, 221 Cal.Rptr. 776, the driver, at 2:15 in the morning, caught the attention of the officer because of his "`pronounced weaving'" within the lane on an Interstate highway over a distance' of approximately three-quarters of a mile. (Id. at p. 10, 221 Cal.Rptr. 776.) Based upon this "pronounced weaving" that "continue[d] for a substantial distance," the court in Perez held that the temporary detention of the defendant was lawful. (Id at p. 11, 221 Cal.Rptr. 776.) The facts here are quite different: the stop occurred late in the afternoon as a result of a momentary weave within the motorist's lane on a city street.[4]
Similarly, in Bracken, supra, 83 Cal. App.4th Supp. at page 3, 99 Cal.Rptr.2d 481, the basis for the detention was the citing officer's observation that the defendant's vehicle had weaved within its lane for approximately one-half mile. The court  citing Perez, supra  concluded that the officer's observation of the defendant's "vehicle weav[ing] within its lane for a considerable distance" provided justification for the traffic stop. (Bracken, supra, at p. 4, 99 Cal.Rptr.2d 481.) Here, unlike Bracken, the detention was not founded upon Arburn's vehicle having weaved within its lane for a distance even approaching one-half mile.
The Perez court noted that the motorist's weaving "continue[d] for a substantial distance." (Perez, supra, 175 Cal.App.3d Supp. at p. 11, 221 Cal.Rptr. 776.) In Bracken, supra, 83 Cal.App.4th Supp. at page 4, 99 Cal.Rptr.2d 481, the court noted that the weaving occurred "for a considerable distance." I agree with the majority that "the lack of evidence that Arburn was observed weaving over a `substantial' or 'considerable' distance does not prevent a finding of reasonable suspicion." (Maj. opn. at pp. 18-19, fn. omitted.) (Indeed, the Perez court did not define "substantial," and the Bracken court did not define "considerable.") But by the same token, the momentary weaving within the motorist's own lane  of itself, and even where the record discloses (ambiguously) that the driver "almost hit the ... curb"  is unlikely to satisfy the reasonable suspicion requirement for a detention.[5]
The officer in Perez had extensive training and experience in dealing with motorists under the influence of drugs and alcohol. (Perez, supra, 175 Cal.App.3d Supp. at p. 11, 221 Cal.Rptr. 776.) And the Bracken court noted that the officer had five and one-half years' experience and had qualified as an expert in prior drunk driving cases. (Bracken, supra, 83 Cal. App.4th Supp. at p. 4, 99 Cal.Rptr.2d 481.) Here, there was no evidence of the length of time Officer Lira had served with the *22 highway patrol, what type of training he had received, or what, experience he had, if any, in investigating cases of driving under the influence. While I agree with the majority that the existence of a record concerning the officer's experience in addressing such cases is not determinative (Maj.opn., p. 18), I nonetheless view its absence here to be of some significance, particularly in light of the minimal information concerning the officer's observations preceding the traffic stop.
In Russell, supra, 81 Cal.App.4th at page 98, 96 Cal.Rptr.2d 568, the defendant contended that evidence found in a vehicle should have been suppressed because "it was improperly obtained as a result of an unreasonably prolonged detention." The court only briefly addressed the defendant's "suggestion]" (id. at p. 102, 96 Cal. Rptr.2d 568) that the traffic stop was unjustified, concluding summarily  based upon the officer's observation at 7:00 a.m. that the subject vehicle was traveling approximately 10 miles under the speed limit on an Interstate highway and was "repeatedly drifting] around within its lane and sometimes out of its lane" (id. at p. 99, 96 Cal.Rptr.2d 568, fn. omitted)  that the erratic driving justified the traffic stop. (Id. at p. 102, 96 Cal.Rptr.2d 568.) The repeated drifting of the slow-moving vehicle in Russell is plainly distinguishable from the momentary weave of the Arburn vehicle observed by Officer Lira.
And in Perkins, supra, 179 Cal.Rptr. 431, 126 Cal.App.3d Supp. at page 14, the court held that the detention was justified, where the defendant drove his vehicle 20 miles under the speed limit and was "weaving abruptly from one side of his lane to the other." The individual circumstances here are distinguishable from, and significantly less extreme than, the evidence of erratic driving found in Perkins.
The events that Officer Lira observed immediately before detaining Arburn were not sufficient for the officer to have had "specific and articulable facts causing him to suspect" that Arburn was involved in "some activity relating to crime." (In re Tony C, supra, 21 Cal.3d at p. 893, 148 Cal.Rptr. 366, 582 P.2d 957.) The cases cited by the majority do not support a contrary conclusion. As one court has aptly noted: "[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." (U.S. v. Lyons (10th Cir.1993) 7 F.3d 973, 976, overruled on another ground in U.S. v. Botero-Ospina (10th Cir. 1995) 71 F.3d 783, 786-787.) I therefore agree with the trial court that Arburn's detention was constitutionally infirm and would affirm the judgment entered on the order granting of the petition for writ of mandate.
NOTES
[1] All further statutory references are to the Vehicle Code unless otherwise noted.
[2] The facts are taken from Officer Lira's sworn statement and unsworn narrative in the investigation report. Both documents were properly admitted in the proceedings below. (See generally MacDonald v. Gutierrez (2004) 32 Cal.4th 150, 153, 8 Cal.Rptr.3d 48, 81 P.3d 975.)
[3] As an aside, we note that Arburn's assertion that he was observed weaving for only 50 to 60 yards is not supported by admissible evidence. Arburn was not present at and did not testify at the administrative hearing. His attorney argued that Arburn only weaved for 50 to 60 yards at most, but that assertion is supported only by an exhibit drawn by the attorney that shows the Bascom/Forest intersection and surrounding area. Neither of Officer Lira's reports indicate how far away Arburn's vehicle was when he first noticed the erratic behavior.
[4] Two cases that distinguished Perez in which the detentions were held unlawful  and in which the facts were much more similar to the case here than those in Perez  are instructive. In U.S. v. Colin (9th Cir.2002) 314 F.3d 439, the court held the traffic stop unlawful because there was neither "`pronounced weaving,'" nor a "weave for a `substantial distance'" (id. at p. 446); rather, the vehicle simply "touch[ed] the right fog line and the center yellow line each for 10 seconds, after legitimate lane changes." (Ibid.) In State v. Binette (Tenn.2000) 33 S.W.3d 215, 219, the defendant's vehicle at least touched the yellow line on multiple occasions, but the court held that the detention was unjustified, finding no evidence of "pronounced weaving or hard swerving."
[5] The majority notes: "`Weaving' for even the length of a block may signify that something is amiss, and the distance of observation is not a controlling factor in evaluating a traffic stop." (Maj. opn. at p. 19.) But the record does not support the majority's implication that Officer Lira observed Arburn's vehicle weaving for one block, or for a distance even approaching it.