Filed 4/28/14  Sanchez v. State of Cal. DMV CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ABEL SANCHEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF MOTOR VEHICLES,<br><br>Defendant and Respondent. | D064031<br><br><br><br>(Super. Ct. No. 37-2012-00087537-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.


Paul H. Neuharth, Jr., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Chris A. Knudsen and Ronald R. Giusso, Deputy Attorneys General, for Defendant and Respondent.

Abel Sanchez appeals from a judgment denying his petition for a writ of mandate to set aside the suspension of his driver's license by the State of California, Department of

Motor Vehicles (DMV) for driving with a blood alcohol content of at least .08 percent. (Veh. Code, §§ 13353.2, subd. (a)(1), 13353.3, subd. (b)(2).) Sanchez contends that the suspension should be set aside because the arresting officer did not have reasonable suspicion to stop his vehicle. As we will explain, Sanchez's appeal is without merit, and we accordingly affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of October 11, 2012, San Diego Police Officer Charles De La Cruz was driving to the scene of a burglary that had just been reported at 9980 Scripps Ranch Boulevard. The burglary suspect was described as "a white male with a s[l]ight beard" driving "an older silver Toyota Tacoma extra cab" toward Pomerado Road.

As Officer De La Cruz drove eastward on Pomerado Road, just east of Interstate 15, he saw a silver 2005 Toyota Tacoma with an extended cab stopped in traffic in the westbound lane, and he observed the driver to be a male with a slight beard. As Officer De La Cruz slowed down and passed in the opposite direction, the driver looked away. Officer De La Cruz made a U-turn and stopped the vehicle as it reached 9550 Miramar Road.[1] The location of the traffic stop was 1.73 miles from the scene of the burglary.

---

[1] As the parties explain, Pomerado Road changes names to Miramar Road as it crosses Interstate 15 to the west.

Sanchez, who is a dark-complected Hispanic male with a mustache, was the driver of the 2005 silver Toyota Tacoma stopped by Officer De La Cruz. Upon questioning Sanchez, Officer De La Cruz determined that Sanchez was not involved in the burglary but noticed that Sanchez showed signs of alcohol intoxication, including the smell of alcohol and red, watery eyes.

Sanchez, who admitted he had been drinking the night before, performed unsatisfactorily on all of the field sobriety tests that Officer De La Cruz administered. A preliminary alcohol screening test indicated that Sanchez had a blood alcohol level of 0.145 percent. Officer De La Cruz arrested Sanchez for driving under the influence (Veh. Code, § 23152), and a blood test performed at police headquarters on Sanchez showed a blood alcohol level of 0.14 percent.

The DMV suspended Sanchez's license and issued a temporary 30-day license pending administrative proceedings. Sanchez requested an administrative hearing pursuant to Vehicle Code section 13558 to determine whether the suspension of his license was justified. (*Id*., subd. (a).)

A DMV hearing officer held an administrative hearing on November 13, 2012, at which Sanchez testified and was represented by counsel. In addition to Sanchez's testimony, the evidence before the hearing officer included (1) Officer De La Cruz's arrest report; (2) the result of Sanchez's blood test showing a blood alcohol level of 0.14 percent; and (3) Sanchez's driving record showing a prior license suspension in 2009 for driving under the influence.

On November 15, 2012, the hearing officer issued findings and a decision suspending Sanchez's license for one year, from November 24, 2012, through November 23, 2013. The hearing officer found that Officer De La Cruz's investigatory traffic stop was justified due to the description of the burglary suspect and his vehicle, and that after observing objective signs of Sanchez's intoxication, Officer De La Cruz had a duty to investigate whether Sanchez was driving under the influence, which was confirmed by the field sobriety tests and chemical tests.

On December 12, 2012, Sanchez filed a petition for writ of mandate in the trial court to challenge the DMV's suspension of his license. (Code Civ. Proc., § 1094.5; Veh. Code, § 13559.) Sanchez alleged that he was improperly detained by Officer De La Cruz because neither he nor his vehicle matched the description of the burglary suspect. Sanchez alleged that he was a Mexican male with a moustache, but the burglary suspect was a White male with a beard, and he was driving "a recent model year silver Toyota Tacoma," but the burglary suspect was purportedly driving "an older model year silver Toyota Tacoma."

The trial court ruled against Sanchez and entered judgment in favor of the DMV.

II

DISCUSSION

A.     *Standard of Review*

"In ruling on a petition for writ of mandate following a DMV suspension order, the 'trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " ' " (*Garcia v.*

4

*Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 81-82.) "On appellate review, this court reviews ' "the record to determine whether the trial court's findings are supported by substantial evidence." ' [Citations.] Issues of law are reviewed de novo." (*Id.* at p. 82.) "We review the determination of reasonable suspicion independently, as it is a mixed question of fact and law." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 509; see *Arburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, 1484 [in action challenging license suspension, court applied independent review when determining whether the arresting officer had reasonable suspicion to conduct a traffic stop].)

B.      *The Arresting Officer Had Reasonable Suspicion to Conduct a Traffic Stop to Investigate Sanchez's Possible Involvement in the Burglary*

"[I]n order for the DMV to validly suspend a person's driver's license, 'the underlying arrest must have been lawful.' " (*Dyer v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 161, 168.) Thus, as the hearing officer acknowledged, one of the issues presented for resolution at the administrative hearing was whether Sanchez was lawfully arrested.

The standards governing the lawfulness of an investigatory stop by law enforcement are well established. "Under the cases, an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the

5

totality of the circumstances' in each case. [Citations.] [¶] Reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause, including an anonymous tip. [Citation.] But to be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' [Citation.] The officer's subjective suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." [Citation.]' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.)

The record supports a finding that Officer De La Cruz had a subjective suspicion that Sanchez might have been involved in the burglary. As Officer De La Cruz's report explains, when seeing Sanchez's vehicle he noticed that it was a 2005 silver Toyota Tacoma extended cab, which was similar to the description of the "older" silver Toyota Tacoma extra cab involved in the burglary. Further, when passing by Sanchez's vehicle on the opposite side of the road, Officer De La Cruz observed the driver to be a male with what — according to his report — he perceived to be a slight beard, but the driver turned away from him when he attempted to look more closely. The burglary suspect was a White male with a slight beard. Finally, Sanchez's vehicle was approximately a mile and half away from the scene of the burglary and driving on the road that the burglary suspect was reported to be heading toward.

6

Sanchez argues that Officer De La Cruz's subjective suspicion was not objectively reasonable for several reasons.[2]

First, Sanchez argues that his vehicle could not reasonably be described as an "older" Toyota Tacoma. He argues that the body design of the Toyota Tacoma changed after 2004, and that an older Toyota Tacoma could only mean a vehicle with an older body design.[3] Sanchez argues that because his vehicle was a 2005 model, with the new body design, it was not an older Toyota Tacoma. We reject this argument. In everyday language, reference to an older vehicle commonly means a vehicle that shows some signs of age because it is a few years old. It is objectively reasonable to assume that the description of an older Toyota Tacoma was given by an eyewitness who was not necessarily familiar with the details of Toyota Tacoma body design changes. A police officer searching for the burglary suspect thus could have reasonably focused on *any* silver Toyota Tacoma extra cab more than a few years old, such as Sanchez's 2005 vehicle, and could reasonably have detained Sanchez to investigate based on the totality of the circumstances, including the description of the vehicle and its location in the

---

[2] We note that Sanchez challenges only the reasonableness of the initial traffic stop, and does not argue that it was unreasonable for Officer De La Cruz to perform the field sobriety tests or subsequently arrest Sanchez for driving under the influence once Officer De La Cruz observed signs of alcohol intoxication.

[3] The record contains very limited evidence about the change in the Toyota Tacoma body design. The only evidence consists of Sanchez's statement during his testimony that the body style of his vehicle "hasn't changed from 2005 to 2011," so that if Officer De La Cruz "was looking for an older Tacoma, I don't think he would have pulled me over."

7

vicinity of the burglary. (See *People v. Lazanis* (1989) 209 Cal.App.3d 49, 54-55 [police officer was justified in stopping defendant's automobile when there was immediacy in the time frame after a burglary, the car was compact like the burglars' car even though of a different make, the car contained several individuals when the burglary was committed by three people, and was proceeding in a direction away from the location of the burglary]; *People v. Flores* (1974) 12 Cal.3d 85, 91-92 [investigatory traffic stop justified when officer detained a vehicle, "unique primarily because of its vintage and occupied by persons who fit the general description of the suspects"].)

Second, Sanchez argues that it was not objectively reasonable for Officer De La Cruz to suspect him of being involved in the burglary because the burglar was described as a White male with a slight beard, but Sanchez is a dark-complected Hispanic with a mustache. As we will explain, we reject that argument as well.[4]

Initially, we note that Sanchez's argument assumes that Officer De La Cruz had a good opportunity to observe Sanchez's race and facial hair before he pulled over the vehicle, making it unreasonable for him to stop someone not matching the suspect's

---

[4] Sanchez also contends that the description of the burglary suspect was too vague to support a legally permissible traffic stop. We disagree. Although "[a] vague description does not, standing alone, provide reasonable grounds to detain all persons falling within that description[,]" when a vague description is combined with "more particularized descriptions" and "*additional* circumstances known to the officer" such as proximity to the crime scene, the detention of a suspect is justified. (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 382 (*Carlos M.*).) Here, in addition to the vague description of a White male with a slight beard, the information upon which Officer De La Cruz acted included a very particular vehicle description as well as the road on which the vehicle was thought to be driving.

description.  According to Officer De La Cruz's report, that is not the case.  As Officer De La Cruz described the encounter, he first noticed Sanchez's vehicle from the opposite side of a multi-lane street.  According to Officer De La Cruz, he observed only that Sanchez was a male with a slight beard before Sanchez turned away from him.  Under those circumstances, with Sanchez driving a vehicle matching the description of the burglar's vehicle on the road that the burglar was reportedly heading toward, and with only a cursory view of Sanchez as a male with facial hair, it was objectively reasonable under the totality of the circumstances for Officer De La Cruz to conduct a traffic stop in order to investigate more thoroughly.

In addition, numerous cases have found that because witness descriptions are often inexact, an investigatory detention may be objectively reasonable under the totality of the circumstances even when a suspect's characteristics do not perfectly match the perpetrator's description.  (See, e.g., *People v. Craig* (1978) 86 Cal.App.3d 905, 911-912 [even though "[d]efendants did not perfectly match the general description" provided, given the totality of the circumstances the officers acted reasonably in stopping and initially detaining the defendants].)  "[M]inor discrepancies do not prevent development of the suspicions which justify temporary detention for questioning.  Crime victims often have limited opportunity for observation; their reports may be hurried, perhaps garbled by fright or shock.  More garbling may occur as the information is relayed to the police broadcaster and from the broadcaster to the field.  It is enough if there is adequate conformity between description and fact to indicate to reasonable officers that detention and questioning are necessary to the proper discharge of their duties."  (*People v. Smith*

9

(1970) 4 Cal.App.3d 41, 48-49 [adequate similarities between suspects' characteristics and perpetrators' description existed to support reasonable suspicion even though witnesses referred to "three Negroes" and a white 1962 Chevrolet, and the officers actually stopped a "white 1961 Chevrolet containing four Negro occupants"]; see *Carlos M.*, *supra*, 220 Cal.App.3d at p. 382 [despite discrepancies between suspect's and perpetrator's reported attire, "[a]n officer, drawing on his training and experience [citation], could reasonably consider that the circumstances of the crime . . . might inhibit the victim's ability to describe the assailants' attire with . . . precision," and thus the court "must assess the totality of the circumstances, rather than dwell on isolated discrepancies, to determine whether [the officer] could reasonably have suspected" the appellant].)

Here, under the totality of the circumstances, especially given the close match between Sanchez's vehicle and that of the burglar, the location of Sanchez's vehicle consistent with fleeing from the burglary, and Officer De La Cruz's limited ability to view Sanchez's physical characteristics, it was objectively reasonable for Officer De La Cruz to stop Sanchez's vehicle to investigate whether Sanchez was involved in the burglary despite the fact that Sanchez turned out to be a dark-complected Hispanic rather than White, and with a mustache rather than a slight beard.[5]

---

5    Although Sanchez's argument could be more clearly expressed, he also appears to contend that the DMV did not present adequate evidence to establish the reasonableness of the traffic stop because Officer De La Cruz was not called to testify.  As here, the DMV may properly rely on the officer's sworn report in determining whether a license suspension is supported by the evidence.  (Veh. Code, § 13557, subd. (a); *Lake v. Reed* (1997) 16 Cal.4th 448, 458; *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 153.)  As we

Finally, Sanchez argues that although he was stopped 1.73 miles from the scene of the burglary, and was driving on the same road that the burglar was seen fleeing toward, it was not reasonable for Officer De La Cruz to have concluded that the burglary suspect could have been in that location. Specifically, Sanchez argues that the burglar would have driven eastward on Pomerado Road, *away* from Interstate 15, rather than westward *toward* Interstate 15, which is a route with heavier traffic. Sanchez's argument is purely speculative as to which way a suspected burglar would flee. There is no reasonable basis for Officer De La Cruz to have limited his search for the burglary suspect to vehicles driving only in a certain direction. It is just as reasonable for a police officer to believe that a person who committed a burglary would flee toward the freeway to make a quick getaway or toward a heavily trafficked area where he could blend in with other vehicles.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.

---

have explained, Officer De La Cruz's report provided adequate evidence to establish that the investigatory stop was subjectively and objectively reasonable.