Filed 9/24/25  P. v. Cooc CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100523 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE015641) |
| v. | |
| JIMMY CHI COOC, | |
| Defendant and Appellant. | |

In 2023, defendant Jimmy Chi Cooc was pulled over and arrested on suspicion of driving under the influence.  During a hearing on a motion to suppress evidence, defendant argued there was insufficient evidence to a support reasonable suspicion of his crime.  The magistrate denied the motion to suppress, as did the trial court.  Defendant later pled no contest to being a felon in possession of a firearm and driving under the influence.  Defendant appeals, requesting this court reverse the trial court's ruling on his motion to suppress.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Early September 30, 2023, California Highway Patrol Officer Juan Garcia and his partner pulled defendant over for suspicion of driving under the influence and subsequently arrested him. Defendant later pled no contest to being a felon in possession of a firearm and driving under the influence.

On October 30, 2023, defendant filed a motion under Penal Code[1] section 1538.5 to suppress all evidence related to his arrest.

During the preliminary examination, Officer Garcia testified he saw a vehicle "that was weaving in a serpentine manner within [a] lane of the roadway," agreeing with the description defendant was "drifting within the lane." When asked to clarify the term serpentine, Officer Garcia explained, "[G]enerally they use the entire width of the lane to drive, so they'll drive all the way to the right, and then they'll drive all the way to the left, in a continuous fashion." Officer Garcia further said he did not consider the weaving to be "drastic," clarifying: "It's kind of more slower in motion, if you will. It's not really jerking or anything like that." Based on his observations, Officer Garcia testified he "believed that the driver was possibly impaired." He estimated the duration of his observation to last 30 seconds and span a distance of "maybe a mile."

After reviewing the dashcam video, Officer Garcia confirmed defendant's vehicle was "weaving" before he initiated a traffic stop to investigate the driver's possible impairment. In the dashcam video played for the trial court, the officers can be heard asking after pulling defendant over if he was "falling asleep or what[ was] going on." Officer Garcia testified he had received approximately 56 hours of training related to driving under the influence and had conducted "several hundred [driving under the influence] investigations" in his capacity as a peace officer.

---

[1] Undesignated section references are to the Penal Code.

Defendant argued that Officer Garcia acted without a warrant and lacked reasonable suspicion to support a detention according to *U.S. v. Colin* (9th Cir. 2002) 314 F.3d 439 (*Colin*).

The magistrate, Judge Donald J. Currier, denied defendant's motion to suppress after finding that "a reasonable officer with the same or similar training and experience and the same or similar circumstances, would entertain a reasonable suspicion that criminal activity was afoot, and that . . . [d]efendant was involved in that activity." In making this finding, the magistrate relied on the credibility of Officer Garcia's testimony, citing Officer Garcia's 30 seconds of observing defendant "moving from side to side within his lane . . . driving in a serpentine manner" and "drifting within the lane." The magistrate also considered Officer Garcia's training and experience conducting investigations related to driving under the influence. Additionally, the magistrate noted that after stopping defendant for suspicion of driving under the influence, the officers "inquired as to whether or not . . . [d]efendant was falling asleep."

Defendant renewed his objections to the traffic stop before the trial court in a motion under section 995. The trial court, Judge Deborah D. Lobre, relied on the magistrate's factual findings to deny the motion. Defendant later pled no contest to being a felon in possession of a firearm and driving under the influence.

Defendant appeals.

## DISCUSSION

"When a motion to suppress evidence under section 1538.5 is denied at the preliminary hearing and reviewed by the trial court in a section 995 proceeding, even though the appeal is from the trial court, we, in effect, review the magistrate's decision directly, deferring to the magistrate's factual findings." (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 200.)

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and it is well established that when a police officer

3

detains a citizen, the Fourth Amendment is triggered. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 16.) Traffic stops are treated as investigatory detentions. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.)

"[T]o justify a detention, 'the circumstances known or apparent to the officer must include specific and articulable facts causing [the officer] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person [the officer] intends to stop or detain is involved in that activity. Not only must [the officer] subjectively entertain such a suspicion, but it must be objectively reasonable for [the officer] to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on [the officer's] training and experience [citation], to suspect the same criminal activity.' " (*People v. Aldridge* (1984) 35 Cal.3d 473, 478.) The facts related to a stop are " 'considered in light of the totality of the circumstances.' " (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

Defendant argues we should reverse the magistrate's denial of his motion to suppress because Officer Garcia's observations did not provide reasonable suspicion of driving under the influence. Defendant focuses specifically on *Colin*, *supra*, 314 F.3d 439 in support of his argument. Although "[f]ederal appellate court decisions are not binding on this court, . . . we may consider them for any persuasive value." (*People v. Thomas* (2023) 14 Cal.5th 327, 404.) In *Colin*, the court relied on an Appellate Department of the Superior Court of San Diego County opinion in *People v. Perez* (1985) 175 Cal.App.3d Supp. 8 (*Perez*) to hold " '*pronounced* weaving within a lane provides an officer with reasonable cause to stop a vehicle on suspicion of driving under the influence where such weaving continues for a *substantial* distance.' " (*Colin*, at pp. 445-446, citing *Perez*, at p. Supp. 11.) Defendant contends the facts of the instant case fall short of the " 'pronounced weaving' " for a " 'substantial distance' " standard developed in *Perez* and used in *Colin*. We disagree.

4

In *Perez*, the Appellate Department of the Superior Court of San Diego County addressed the issue of first impression in California of whether an officer may lawfully detain a driver who has been observed weaving within a lane. (*Perez*, *supra*, 175 Cal.App.3d at pp. Supp. 10, 11.) The officer in *Perez* observed and then pulled over a "vehicle because of a 'pronounced weaving' within the lane. The officer described the drift as being two feet in each direction. The officer followed the vehicle while it was weaving for about three quarters of a mile. Due to the weaving observed by the officer the vehicle was stopped. The detention was predicated on the officer's belief that the driver was under the influence of alcohol." (*Id.* at p. Supp. 10.) The *Perez* court found the stop justified and held, "[P]ronounced weaving within a lane provides an officer with reasonable cause to stop a vehicle on suspicion of driving under the influence where such weaving continues for a substantial distance." (*Id.* at p. Supp. 11.)

In *Colin*, an officer suspected a car was potentially being driven "under the influence because the car's wheels touched the fog line on the right side of the right lane for 10 seconds and then, about 5 [to] 10 seconds later, touched the yellow line on the far left of the left lane for another 10 seconds." (*Colin*, *supra*, 314 F.3d at p. 445.) The officer observed the vehicle for 35 to 45 seconds, at a speed of 70 miles per hour. (*Id.* at pp. 441, 445.) Although the court recognized that "in some cases evidence of weaving might be indicative of driving under the influence," it did not find "the evidence . . . sufficient for [the officer] to harbor a reasonable suspicion that [the driver] was driving under the influence." (*Id.* at p. 445.) Relying on *Perez*, *supra*, 175 Cal.App.3d Supp. 8, the Ninth Circuit Court of Appeals found the driver "did not demonstrate 'pronounced weaving' of up to two feet in either direction, or weave for a 'substantial distance.' In fact, the only 'suspicious' behavior [the officer] observed was [the driver's] car touching the right fog line and the center yellow line each for 10 seconds, after legitimate lane changes." (*Colin*, at p. 446.)

5

Defendant contends his serpentine driving pattern does not qualify as pronounced weaving because Officer Garcia described it as not " 'drastic,' " but " 'slower in motion' " and " 'not really jerking or anything like that.' "  However, none of the cases relied on in *Perez* or *Colin* describe jerking or drastic weaving as a requirement.  Instead, the qualifying driving patterns are described like the instant case, such as "the drift . . . being two feet in each direction," " 'continually weaving' but at all times remain[ing] in its lane," and "smooth continuous weaving within a traffic lane."  (*Perez*, *supra*, 175 Cal.App.3d at pp. Supp. 10, 11.)  This language aligns with Officer Garcia's description of the serpentine driving pattern as drifting within the lane and using "the entire width of the lane to drive, so they'll drive all the way to the right, and then they'll drive all the way to the left, in a continuous fashion."  Therefore, Officer Garcia's description of defendant's driving pattern meets the *Perez* standard of pronounced weaving, as relied on by *Colin*.

Defendant further argues Officer Garcia's observations fall short of the substantial distance standard set by *Perez* because his observations lasted only 30 seconds over a shorter distance and at a slower rate of speed than in *Colin*.  However, reasonable suspicion exists when "*pronounced* weaving . . . continues for a *substantial* distance."  (*Colin*, *supra*, 314 F.3d at p. 446.)  Because the court in *Colin* did not find pronounced weaving, there was nothing to continue for a substantial distance.  (*Ibid.* ["Here, [the driver] did not demonstrate 'pronounced weaving' . . . or weave for a 'substantial distance' "].)  Further, neither *Colin*, *Perez*, nor any of the out-of-state cases relied on in *Perez* set a minimum for what constitutes a substantial distance.  (See, e.g., *State v. Bailey* (Ore.Ct.App. 1981) 624 P.2d 663, 664 ["The officer followed [the] defendant for about 4 [to] 5 blocks within the city limits"]; *State v. Dorendorf* (N.D. 1984) 359 N.W.2d 115, 116-117 [traffic stop justified after observing "smooth, continuous weaving within a lane" for "approximately one-eighth to a quarter of a mile"].)  Further, " '[w]eaving' for even the length of a block may signify that something is amiss, and the distance of

6

observation is not a controlling factor in evaluating a traffic stop." (*Arburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, 1485-1486.) Therefore, the distance of "maybe a mile" over which Officer Garcia observed defendant's driving pattern qualifies as substantial.

Finally, we note that in *Colin* the court "[found] it curious that [the officer] did not conduct a sobriety field test or ask [the defendant] if he had been drinking when he stopped the car. This further convince[d] [the court] that [the officer] did not harbor reasonable suspicion that [the defendant] was driving under the influence." (*Colin*, *supra*, 314 F.3d at p. 446.) In contrast here, the trial court noted that after stopping defendant for suspicion of driving under the influence, the officers "inquired as to whether . . . [d]efendant was falling asleep."

Based on the totality of the circumstances, including Officer Garcia's training and experience and his observations of defendant's driving in a serpentine manner for a substantial distance, we conclude a reasonable police officer in a like position would have reasonable suspicion to suspect defendant was driving under the influence. Thus, the trial court did not err in denying defendant's motion.

## DISPOSITION

    The judgment is affirmed.


                                 /s/_____
                                 ROBIE, Acting P. J.


We concur:


/s/_____
RENNER, J.


/s/_____
MESIWALA, J.

8